IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EDMOND GASAWAY,

                                                    Civil Action No.
                              Plaintiff,            9:11-CV-1223 (LEK/DEP)

              v.

BUREAU OF PRISONS,

                              Defendant.

_____

<u>APPEARANCES</u>:

<u>FOR PLAINTIFF</u>:

EDMOND GASAWAY, *Pro Se*
05663-078
FCI RAY BROOK
PO Box 9004
Ray Brook, NY 12977

<u>FOR DEFENDANT</u>:

HON. RICHARD S. HARTUNIAN          PAULA RYAN CONAN, ESQ.
United States Attorney             Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

        Plaintiff Edmond Gasaway, a prodigious *pro se* inmate litigant who is

now barred from filing any future *pro se* actions in this court without prior permission, has commenced this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, alleging that he suffered from food poisoning while confined in a prison facility operated by defendant Bureau of Prisons ("BOP").  In his complaint, plaintiff seeks various forms of relief including a finding of misconduct on the part of the BOP employee who investigated the matter as result of his administrative claim filed with the agency.

Following commencement of the action the court granted plaintiff leave to proceed *in forma pauperis* ("IFP").  Defendant BOP now moves for revocation of plaintiff's IFP status, based upon the "three strikes" provision embodied in 28 U.S.C. § 1915(g) or, alternatively, the court's inherent discretionary authority to curb abuses of the privilege of being granted IFP status.  For the reasons set forth below, I recommend that defendant's motion be granted.

I.   BACKGROUND

Plaintiff is a prison inmate entrusted to the care and custody of the BOP and currently designated to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York.  *See generally* Complaint

2

(Dkt. No. 1).  He commenced this action, while incarcerated at FCI Ray Brook, in the United States District Court for the District of Columbia on or about August 26, 2011.  *See* Complaint (Dkt. No. 1) p. 1.  The filing of the action followed Gasaway's unsuccessful attempt to recover for his alleged injuries by submitting an administrative claim to the BOP.  In his complaint, plaintiff alleges that on July 20, 2010, while confined at the Allenwood Federal Correctional Institution ("FCI Allenwood"), located in White Deer, Pennsylvania, he experienced a severe stomach illness requiring medical attention.  *Id.*  Gasaway attributes his condition to having been served contaminated food in the prison dining hall.  *Id.*

On September 6, 2011, District Judge Ellen S. Huvelle ordered that the matter be transferred to this district pursuant to 28 U.S.C. § 1406(a).[1]  Dkt. No. 3.  Following that transfer and an initial review of plaintiff's complaint, I issued an order dated December 12, 2011, granting plaintiff's application to proceed *in forma pauperis*, authorizing the issuance of summonses for

---

[1]    Although that court's transfer order states that plaintiff is suing for injuries allegedly suffered at FCI Ray Brook, it is clear from a reading of his complaint that the events giving rise to his FTCA claim occurred at FCI Allenwood.  *See generally* Complaint (Dkt. No. 1).  Venue is nonetheless is proper in this district, since under the FTCA an action may be brought in the district where the plaintiff resides or where the underlying act or omission occurred.  28 U.S.C. § 1402(b); *see Jones v. United States,* No. 11-1158, 2011 WL 5101376, at *2 (D.D.C. Oct. 27, 2011) (for venue purposes, a prisoner "resides" where he is incarcerated); *but see Ellingburg v. Comnett,* 457 F.2d 240, 241 (5th Cir. 1972) (per curiam) (prisoner retains pre-incarceration residence).

3

service, and directing a response to the complaint.  Dkt. No. 5.

On February 28, 2012, defendant BOP moved in this and another pending case seeking revocation of plaintiff's IFP status.[2]   In its motion, the BOP argues that plaintiff is precluded from proceeding *in forma pauperis* by virtue of 28 U.S.C. § 1915(g), offering five specific prior dismissals as constituting "strikes" under that provision and arguing, in the alternative, that in any event the court possesses and should exercise inherent discretionary authority to strip plaintiff of his IFP status, based upon prior abuses.  *Id.* Plaintiff has since responded in opposition to defendant's motion, arguing that his IFP status should be upheld or, in the alternative, that the court should  accept a "Bonded Promissory Note" in lieu of the required filing fee. Dkt. No. 15. Defendant's motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

II.     DISCUSSION

A.      Three Strikes Provision

---

[2]      A similar motion has been made on behalf of the defendants in *Gasaway v. Purdue, et al.*, No. 11-CV-1272 (NAM/ATB), an action commenced by the plaintiff under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999 (1971), against the warden and various other corrections workers employed at FCI Ray Brook.

4

In its motion defendant invokes 28 U.S.C. § 1915(g), arguing that under that section plaintiff's litigation history, which includes at least three merit-based dismissals, warrants revocation of his IFP status.

Section 1915(g), which was enacted as part of sweeping inmate litigation reform brought about by adoption of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), though engendering far less litigation than some of its PLRA counterparts including, notably, the exhaustion of remedies requirement of 42 U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).[3]  The manifest intent of Congress in enacting this "three strikes" provision was to curb prison inmate abuses and to deter the filing of

---

[3]       As can be seen, section 1915(g) includes an imminent danger safety valve obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly.  *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002).  The imminent danger exception has no bearing on this case, however, both because plaintiff is no longer incarcerated in the facility in which he was allegedly served contaminated food, and further based upon my finding that he had not yet incurred three strikes prior to commencing this action.

5

multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007); *Gill v. Pidlychak*, No. 9:02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J. & Treece, M.J.).[4] The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has had three previous strikes to engage in the same cost-benefit analysis that other civil litigants must make before deciding whether to commence suit, accompanied by the filing of the full fee – that is, to assess whether the result to be achieved justifies the filing fee expenditure.  *Tafari*, 473 F.3d at 444; *Ibrahim v. Dist. of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006).  As the Second Circuit has noted, in the context of PLRA amendments requiring inmates to authorize prison officials to make deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted *in forma pauperis* status,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing law suits.  Indeed, the very nature of incarceration – prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials – has fostered a "'nothing to lose and

---

[4]  Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

> everything to gain'" environment which allows inmates indiscriminately  to file suit at taxpayers' expense.

*Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir. 1997), *cert. denied sub nom.*, *Nicholas v. Miller*, 523 U.S. 1126, 118 S. Ct. 1812 (1998) (internal citations omitted); *see also Gill*, 2006 WL 3751340, at *2.

The question of whether the dismissal of a prior action qualifies as a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such a question for the court.[5]  *Tafari*, 473 F.3d at 442-43.  In determining whether a dismissal satisfies the failure to state a claim prong of the statute, which is implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions.  *Tafari*, 473 F.3d at 442 (citing *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005)).

In support of its motion, the BOP offers five specific instances in which plaintiff has experienced prior dismissals.  Two of those are not controversial.

---

[5]    The Second Circuit has expressed its view that the time for determination of "strikes" is only when the section 1915(g) issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that section. *Deleon v. Doe,* 361 F.3d 93, 95 (2d Cir. 2004); *see also Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999) ("We . . . doubt whether the entry of a strike is properly considered at the time an action is dismissed").

The first was a civil rights action, *Gasaway v. Obama, et al.,* Civil Action No. 10-1979 (D.D.C. filed Nov. 18, 2010), commenced against the President and other defendants seeking an award of $20 million based upon plaintiff's allegedly unlawful conviction, sentence, and incarceration.  *See* Conan Decl. (Dkt. No. 12-3) Exh. A-1.  That case was dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted, and no appeal was taken from that determination.  *See* Conan Decl. (Dkt. No.12-3) Exhs. A-1 and A-2.  In the second case offered as a strike, Gasaway and other plaintiffs brought suit in the Middle District of Pennsylvania, *McCall, et al. v. Martinez*, Civil Action No. 10-1121 (M.D. Pa. filed May 25, 2010).  *See* Conan Decl. (Dkt. No. 12-3) Exhs. B-1 through B-3.  The complaint in that action was dismissed for failure to state a claim, and plaintiffs were denied leave to amend based upon a finding of futility.[6]  *Id.* at B-1.  The court further found that "[a]ny appeal will be deemed frivolous, lacking merit, and not taken in good faith."  *Id.* at B-2.   These cases clearly qualify as strikes for purposes

---

[6]   In his report and recommendation addressing the complaint in that action, Magistrate Judge J. Andrew Smyser recommended dismissal of the claims brought by all of the plaintiffs, including Gasaway, other than Bondary McCall, in light of their failure to sign the complaint.  *See* Conan Decl. (Dkt. No. 12-3) Exh. B-1.  Based upon his filing of an objection to that report and recommendation, however, expressing a desire to join in the action, District Judge William J. Nealon granted Gasaway's request to proceed IFP and determined that he should not be terminated as a party plaintiff prior to screening of the complaint.  *Id.*

of section 1915(g).

The more problematic dismissals urged by the BOP as constituting strikes involve three habeas petitions filed by Gasaway, one pursuant to 28 U.S.C. § 2255, *see Gasaway v. United States,* Civil Action No. 02-0403 (E.D. Tex. filed June 3, 2002), and the remaining two under 28 U.S.C. § 2241, *Gasaway v. Holder*, Civil Action No. 09-1687 (M.D. Pa. filed Aug. 31, 2009) and *Gasaway v. Ebbert,* Civil Action No. 10-1615 (M.D. Pa. filed Aug. 4, 2010). *See* Conan Decl. (Dkt. No. 12-3) Exhs. C1-D4.  Each of those petitions was dismissed under circumstances which would qualify under section 1915(g) if those proceedings were deemed to fall within the ambit of that provision.

The question of whether the dismissal of a habeas petition can constitute a strike has somewhat divided the courts.  Three decisions from this district, including a relatively recent decision relied upon by the BOP in their motion, have answered in the affirmative, holding that the dismissal of a habeas petition under qualifying circumstances can be viewed as a strike for purposes of section 1915(g).  *See Jones v. Smith,* No. 9:09-CV-1058, 9:10-CV-1331, 2011 WL 7073689 (N.D.N.Y. Dec. 6, 2011) (Baxter, M.J.); *Neal v. Eddy*, No. 07-CV-1333, 2008 WL 4527651 (N.D.N.Y. Oct. 1, 2008) (Scullin,

9

S.J. & Homer, M.J); *Saunders v. Ricks*, No. 9:03-CV-598, 2006 WL 3051792 (N.D.N.Y. Oct. 18, 2006) (Hurd, D.J. & Lowe, M.J.).  Other courts, including two circuit courts of appeals, that have addressed the issue, however, have held to the contrary.  *See, e.g., Andrews v. King,* 398 F.3d 1113 (9th Cir. 2005); *Jennings v. Natrona Cnty. Det. Ctr. Med. Facility,* 175 F.3d 775, 779 (10th Cir. 1999); *see also Zaire v. Welch,* No. 9:03-CV-629, 2008 WL 934426 (N.D.N.Y. Mar. 31, 2008) (Scullin, S.J. & Treece, M.J.).  For the reasons that follow, I adopt the latter position as being more defensible when considering the language of the statute and the purpose for which the PLRA was enacted.

Analysis of a statute such as section 1915(g) must begin with the words of the provision itself.  That section precludes a prisoner from bringing a civil action or appealing a judgment in a civil action or proceeding *in forma pauperis* if on three or more prior occasions, while incarcerated, he or she previously "brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, . ." .  28 U.S.C. § 1915(g).  Unfortunately, the PLRA does not define the term "action."  As a result, the court must look elsewhere for guidance.

10

The question of whether the filing of a habeas petition commences an action has engendered some confusion.  Undeniably, "[f]or some procedural purposes, a petition for a writ of habeas corpus has been regarded as a 'civil action'".  *Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir. 1996) (citing, *inter alia*, *Smith v. Bennett,* 365 U.S. 708, 712, 81 S. Ct. 895, 897-98 (1961)); *see also Davis v. Fechtel*, 150 F.3d 486, 488 (5th Cir. 1998); *Santana v. United States,* 98 F.3d 752, 754 (3d Cir. 1996).  However, such proceedings are not, in a true sense, civil actions, but instead are hybrid in nature.  *Anderson v. Singletary*, 111 F.3d 801, 804 (11th Cir. 1997).  Habeas proceedings are governed by their own procedural rules and differ significantly from the types of prisoner civil rights suits that serve as the focus of the PLRA.  *Martin v. United States*, 96 F.3d 853, 855 (7th Cir. 1996); *see also Santana*, 98 F.3d at 754 ("habeas corpus cases are, in effect, hybrid actions whose nature is not adequately captured by the phrase 'civil action'; they are independent civil dispositions of completed criminal proceedings.") (citing James S. Liebman, 1 FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 2.1, at 3 (1988)).  That Congress appreciated the distinction between actions and proceedings, as those terms are utilized in the PLRA, is evident from the language of the first portion of section 1915(g), which prohibits a prisoner from bringing "a civil

action" or appealing "a judgment in a *civil action or proceeding*" *in forma pauperis* once having accumulated three strikes.  28 U.S.C. § 1915(g) (emphasis added).

The conclusion that habeas petition dismissals do not ordinarily qualify as strikes is buttressed by the fact that virtually every circuit that has addressed the issue has concluded that the PLRA was not intended to apply to habeas petitions.[7]  *See, e.g., Reyes,* 90 F.3d at 678; *Davis*, 150 F.3d at 490; *Anderson*, 111 F.3d at 802; *Martin,* 96 F.3d at 855-56; *Santana,* 98 F.3d at 756.  To quote one of my esteemed colleagues, "it would be incongruous to hold that *habeas* petitions apply to the PLRA for purposes of the 'three strike rule' only."  *Zaire*, 2008 WL 934426, at * 3 (citations omitted).

The position espoused by the BOP also does not square with the congressional intent underlying the PLRA, which was enacted principally to curb prisoner suits challenging prison conditions, many of which are ultimately dismissed as frivolous or lacking in merit.  *See Reyes,* 90 F.3d at

---

[7]     Of course, should a court conclude that a habeas petition filed by an incarcerated petitioner is, in reality, a challenge to conditions of confinement in disguise, it maintains the discretion to count the dismissal of the petition under circumstances otherwise qualifying as a strike.  *Carson v. Johnson,* 112 F.3d 818 (5th Cir. 1997); *see also Owens-El v. United States,* 49 Fed. App'x 247, 249 (10th Cir. 2002) (citing *Jennings*, 175 F.3d at 779 & n.2) (cited in accordance with Fed. R. App. P. 32.1 to show continuing vitality of *Jennings*).

678; *Anderson*, 111 F.3d at 805; *Davis,* 150 F.3d at 490.  Moreover, treating

dismissed habeas petitions as strikes would run counter to the longstanding

tradition of allowing prisoners ready access to federal habeas corpus.  *See*

*Anderson,* 111 F.3d at 805 (citations omitted); *Martin,* 96 F.3d at 855-56.  A

prisoner who may have filed three prior meritless habeas petitions and now

seeks to challenge his or her conditions of confinement, while perhaps

misguided, has not engaged in the type of abusive behavior envisioned by

Congress when enacting the PLRA and its three strikes provision.  Yet, under

the BOP's reading of section 1915(g), that inmate would be precluded from

proceeding *in forma pauperis*.

Based upon the foregoing, I conclude that at the time he was granted

IFP status in this case plaintiff had not yet accumulated three strikes within

the meaning of section 1915(g), at least not based upon the five specific

cases referenced in the BOP's motion.[8]

B.    Discretionary Authority

The finding that plaintiff is not precluded under section 1915(g) from

---

[8]    It is clear that plaintiff now has three strikes, in light of the court's recent dismissal of his complaint in *Gasaway v. Williams,* No. 8:11-CV-0549, 2012 WL 264611 (N.D.N.Y. Jan. 30, 2012) (Suddaby, J.).  Because it appears to be generally accepted that the relevant time for the three strikes inquiry is when IFP status is granted, however, this third strike does not serve as a basis under section 1915(g) to divest plaintiff of his IFP status.  *See Welch v. Selsky*, No. 9:06-CV-0812, 2008 WL 238553, at *5 (N.D.N.Y. Jan. 28, 208) (Kahn, J. & Peebles, M.J.) (citing cases).

proceeding in this case *in forma pauperis* does not end the inquiry.  As the

BOP correctly notes, the ability to litigate *in forma pauperis* is a privilege that

can be denied, revoked, or limited based upon a showing of prior abuses.

*See In re Anderson*, 511 U.S. 364, 365-66, 114 S. Ct. 1606, 1607 (1994).

The authority of a court to deny or limit the privilege is implicit in the

permissive, rather than compulsory, language of the controlling IFP statute,

which provides that "[a] court of the United States *may* authorize the

commencement, prosecution or defense of any suit, action or proceeding,

civil or criminal, or appeal therein, without prepayment of fees or security

therefore."  28 U.S.C. § 1915(a)(1) (emphasis added).  *See In re McDonald*,

489 U.S. 180, 184, 109 S. Ct. 993, 996 (1989).  For this reason, courts are

regarded as possessing discretionary authority to deny, and thus logically to

revoke, IFP status to prisoners who have abused the privilege even when the

strict requirements of section 1915(g) have not been met.  *See Butler v. Dep't

of Justice*, 492 F.3d 440, 444-45 (D.C. Cir. 2007).

     In this instance, plaintiff's history of prior abuses is well chronicled.

After engaging in a thorough review of plaintiff's litigation history, which at the

time included the filing of seventeen *pro se* prisoner actions or proceedings,

in addition to the one then pending, in six different districts, District Judge

Glenn T. Suddaby concluded that

> (1) Plaintiff lacks a good-faith expectation in prevailing in his
> lawsuits, (2) he has proven himself to be vexatious and indeed
> incorrigible when proceeding *pro se,* (3) he has caused needless
> expense to other parties and placed an unnecessary burden on
> the Court and its personnel, and (4) he has demonstrated that no
> lesser sanctions (e.g., such as dismissal or chastisement) [short
> of a bar order] would be adequate to protect the Court and other
> parties.

*Gasaway v. Williams,* 2012 WL 264611, at *7. Based upon these findings,

and after affording plaintiff an opportunity to be heard regarding the matter,

Judge Suddaby issued a bar order on February 10, 2012, prohibiting plaintiff

from filing any future *pro se* actions in the Northern District of New York

without prior leave from the court. *See Gasaway v. Williams,* No. 8:11-CV-

00549, slip op. (N.D.N.Y. Feb. 10, 2012).

Based upon Judge Suddaby's findings, which I echo, I recommend that

the court exercise its inherent discretionary authority by revoking plaintiff's

IFP status and requiring him to prepay, in full, the requisite filing fee before

proceeding in this action.[9]

## III.    SUMMARY AND RECOMMENDATION

The plaintiff, a vexatious litigant well known to this and other courts, has

---

[9]     As was previously mentioned, as an alternative to advancing the statutory
fee plaintiff offers to provide a "Bonded Promissory Note", citing 28 U.S.C. § 2041 as a
basis for making that suggestion. That section, which governs monies paid into the court
pending determination of a litigated matter, clearly has no applicability in this instance.

now accumulated three strikes and is the subject of a bar order entered in this court.  Based upon the five matters cited in defendant's motion, however, I am unable to conclude that, at the time he was granted IFP status in this action, plaintiff had three strikes qualifying under 28 U.S.C. § 1915(g). Nonetheless, based upon the my finding, as well as that of District Judge Suddaby in a separate action, to the effect that plaintiff has abused the privilege of proceeding *in forma pauperis*, I recommend that the court exercise its inherent authority and revoke plaintiff's IFP status in this matter. Based upon the foregoing, it is hereby respectfully

RECOMMENDED, that defendant's motion be GRANTED (Dkt. No. 12), that plaintiff's IFP status in this case be REVOKED, and that plaintiff's complaint in this action be DISMISSED unless, within thirty days of the date of the court's order acting upon this report and recommendation, if approved, he pays the required statutory filing fee in full.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72;

*Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Date:   April 3, 2012
          Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

17



Slip Copy, 2011 WL 7073689 (N.D.N.Y.)

(Cite as: 2011 WL 7073689 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Michael JONES, Plaintiff,
v.
Joseph SMITH, Superintendent, Shawangunk
Correctional Facility, et al., Defendants.
Michael Jones, Plaintiff,
v.
Brian Fischer, David Rock, et al., Defendants.
Nos. 9:09–CV–1058 (GLS/ATB), 9:10–CV–1331
(GLS/ATB).

Dec. 06, 2011.

Michael Jones, pro se.

David L. Cochran, Asst. Attorney General for Defendants
in 9:09–CV–1058.

Krista A. Rock, Asst. Attorney General for Defendants in
9:10–CV–1331.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.
   *1 These matters have been referred to me for Report
and Recommendation by the Honorable Gary L.
Sharpe,[FN1] United States District Judge, pursuant to 28
U.S.C. § 636(b) and Local Rules N.D.N .Y. 72.3(c).
        FN1. *Jones v. Fischer,* 9:10–CV–1331 was
        originally assigned to District Judge Mae A.
        D'Agostino and Magistrate Judge George H.
        Lowe, but was reassigned to me and District
        Judge Sharpe on November 29, 2011 by Chief
        District Judge Norman A. Mordue. (Dkt. No.
        35).

   Presently before the court is defendants' motion in
each of the above cases for an order revoking plaintiff's *in
forma pauperis* (IFP) status pursuant to 28 U.S.C. §

1915(g). (Dkt. No. 75 in 9:09–CV–1058; Dkt. No. 25 in
9:10–CV–1331). Plaintiff responded in opposition to the
motion in both actions, and defendants filed replies. (Dkt.
Nos. 78, 79; 31, 32). In 9:10–CV–1331, plaintiff filed a
"Supplemental Response." (Dkt. No. 33). Plaintiff filed a
"surreply" in 9:10–CV–1058 that was stricken by the
court. (Dkt.Nos.80, 81).

   Because defendants' motions to dismiss both of
plaintiff's pending cases were virtually identical, I will
address both motions to dismiss in this
ReportRecommendation.[FN2] On December 1, 2011, while
the motions were pending, plaintiff submitted the filing fee
in *Jones v. Fischer,* No. 9:10–CV–1331. Because plaintiff
has paid the filing fee in 9:10–CV–1331, the motion to
dismiss that case is moot and must be terminated.
However, for the following reasons, this court agrees that
plaintiff has at least three-strikes, and this court will
recommend revoking plaintiff's IFP status, and dismissing
*Jones v. Smith,* 9:09–CV–1058, unless plaintiff pays the
filing fee in that case within forty-five (45) days of any
order adopting this recommendation.

        FN2. These cases remain separate "actions"
        because the merits are not related; however, the
        individual facts of the cases are irrelevant to the
        common questions presented to the court by the
        pending motions.

**I.  *"Three Strikes" Provision of the PLRA***

**A. Legal Standards**

   The "three strikes" section of the PLRA prohibits the
filing of an action *in forma pauperis* when the plaintiff has
had federal actions or appeals dismissed on at least three
prior occasions, either for failure to state a claim or for
frivolousness. 28 U.S.C. § 1915(g). The purpose of
section 1915(g) is to "stem the tide of egregiously
meritless lawsuits" by "forcing prisoners to go through the
same thought process non-inmates go through before filing
a suit, *i.e.* is filing this suit worth the costs?" *Tafari v.
Hues,* 473 F.3d 440, 443 (2d Cir.2007) (citations omitted).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7073689 (N.D.N.Y.)

(Cite as: 2011 WL 7073689 (N.D.N.Y.))

Section 1915(g) provides that:

[i]n no event shall a prisoner bring **a civil action or appeal a judgment in a civil action or proceeding** [*in forma pauperis* ] if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought **an action or appeal** in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(Emphasis added). An action may be dismissed pursuant to section 1915(g), even if the court originally granted plaintiff *in forma pauperis* status. (Dkt. No. 29 at 10). *See, e.g., Gamble v. Maynard,* 9:06–CV–1543 (DNH/DEP), 2008 WL 150364, at *5 (N.D.N.Y. Jan. 14, 2008) (conditionally dismissing complaint under section 1915(g) and finding that *in forma pauperis* status was improvidently granted); *Luevano v. Clinton,* 5:10–CV–754 (GTS/ATB), 2010 WL 3338704, at *3 (N.D.N.Y. July 1, 2010). An action is "frivolous" for purposes of the statute if it " 'lacks an arguable basis either in law or in fact.' " *Id.* at 442 (citation omitted). In determining whether a dismissal satisfies the failure to state a claim prong of the statute, courts have drawn upon the provisions of Fed.R.Civ.P. 12(b)(6) for guidance, in light of the similarity in phrasing utilized in the two provisions. *Id.* The three strikes provision applies to cases that were dismissed for failure to state a claim or for frivolousness even prior to the 1996 enactment of section 1915(g). *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000).

**\*2** A dismissal cannot count as a strike until after the opportunity to appeal has been exhausted or waived. *See, e.g., Partee v. Connolly,* 08 Civ. 4007, 2009 WL 1788375, at *2 (S.D.N.Y. June 23, 2009) (collecting cases). If a district court dismisses an action on a ground specified in section 1915(g), and an appellate court simply affirms, together the decisions constitute a single strike. *Id.; Thompson v. Drug Enforcement Admin.,* 492 F.3d 428, 436–37 (D.C.Cir.2007). However, when a district court dismisses an action for any of the reasons set forth under the three strikes statute, and if the subsequent appeal is dismissed as frivolous, then the two decisions count as

separate strikes. *Chavis v. Chappius,* 618 F.3d 162, 169 (2d Cir.2010) ( "sequential dismissals on strike grounds can provide separate strikes under § 1915(g)").

If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent action *in forma pauperis* unless the plaintiff is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). This exception to section 1915(g) has been interpreted to apply only if the plaintiff faces imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002).

**B. Defendants' Contentions**

Defendants argue that plaintiff has seven strikes, listed in defense counsel's declaration. (Cochran Decl. ¶ 5(a)–(g) & Exs. A–B, F, H–I, Dkt. Nos. 75–1, 75–2). The first two strikes relate to one civil rights action, filed in 1993. *Jones v. Coughlin,* No. 93–CV–7341 (S.D.N.Y.) (Briant, J.). On October 25, 1993, District Court Judge Charles L. Briant dismissed [FN3] plaintiff's action *sua sponte* under former section 1915(d). (Def.s' Ex. A, Dkt. No. 75–2). The court further certified, under "section 1915(a)" that any appeal from that order would not be taken in good faith. (*Id.*). Notwithstanding the District Court's warning, plaintiff appealed Judge Briant's order, and on April 7, 1994, the Second Circuit denied plaintiff's motion to proceed *in forma pauperis* and "dismissed" the appeal. (*Id.* at 2).

> [FN3.] Defendants have submitted copies of the docket sheet in *Jones v. Coughlin,* No. 93–CV–7341. Although defendants have included some of the actual orders, the docket records are sufficient if they indicate that the prior action was dismissed for one of the reasons listed in section 1915(g). *See Harris v. City of New York,* 607 F.3d 18, 23–24 (2d Cir.2010) (courts do not have an affirmative obligation to examine the actual order of dismissal when the docket sheet accurately describes the grounds for dismissal).

Defendants contend that the other five strikes arise from a petition for a writ of habeas corpus that plaintiff filed, on May 30, 2002, in the Southern District of New York, challenging a September 7, 1982 conviction for

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7073689 (N.D.N.Y.)

(Cite as: 2011 WL 7073689 (N.D.N.Y.))

robbery, for which plaintiff received a two to six-year sentence. (Def.s' Ex. C, Pet. for Habeas Corpus in *Jones v. Herbert,* 1:02–CV–4075 (S.D.N.Y.)). On February 2, 2004, after ordering plaintiff to file an amended petition and considering that amendment, District Judge Michael B. Mukasey dismissed the action. (Def.s' Ex. F). In his order, Judge Mukasey stated that he would not issue a certificate of appealability under 28 U.S.C. § 2253 because plaintiff had not shown the denial of a constitutional right, and that no appeal would be taken in good faith under 28 U.S.C. § 1915(a).[FN4] (*Id.,* Dkt. No. 75–2 at 40–41).

> FN4. Currently, the specific section is 28 U.S.C. § 1915(a)(3), which states that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

**\*3** Notwithstanding Judge Mukasey's order, plaintiff appealed to the Second Circuit. On August 19, 2004, the Second Circuit denied plaintiff's motions (including an IFP motion) and dismissed his appeal. (Def.s' Ex. B, Dkt. No. 75–2 at 9).[FN5] Plaintiff then went back to the District Court and moved to vacate the February 2, 2004 order under Fed.R.Civ.P. 60(b). On March 25, 2005, Judge Mukasey denied the Rule 60(b) motion to vacate, stating specifically that his February 2, 2004 dismissal was based on 28 U.S.C. § 1915(e) (2)(B)(ii) for "failure to state a claim." (Def.s' Ex. G, Dkt. No. 75–2 at 43–45). In his March 25, 2005 order, Judge Mukasey again certified that "pursuant to 28 U.S.C. § 1915(a)(3) ... any appeal from this order would not be taken in good faith." (*Id.* at 44–45). The judge also stated that he would not accept any further papers under that docket number. (*Id.* at 44).

> FN5. Although the docket entries for the district court action provided by defendants do not elaborate on the specifics of the motions denied on appeal, the docket entries for Second Circuit docket no. 04–1725–pr, a copy of which is attached to this Report–Recommendation, confirm that the appellate court denied Jones' motions for IFP status, for appointment of counsel, and for a certificate of appealability.

Plaintiff did not give up. It appears that plaintiff appealed the denial of his motion to vacate to the Second Circuit, while also moving for reconsideration of the same order in District Court. On August 20, 2007, District Judge Kimba Wood (to whom the case was presumably re-assigned following Judge Mukasey's retirement) denied plaintiff's motion, stating that for the reasons that were stated in the March 25, 2005 order, the motion for "reconsideration" would be denied. (Def.s' Ex. H; August 20, 2007 order). Judge Wood denied a certificate of appealability and certified that any appeal would not be taken in good faith. (*Id.*). On November 30, 2007, the Second Circuit denied plaintiff's IFP motion, and dismissed plaintiff's second appeal, finding that plaintiff had failed to show that "jurists of reason would find it debatable whether the district court abused its discretion in denying the Rule 60(b) motion [to vacate]" or that "jurists of reason would find it debatable whether the underlying habeas petition, in light of the grounds alleged to support the Rule 60(b) motion, states a valid claim of the denial of a constitutional right." *Jones v. Herbert,* No. 05–2249–pr (2d Cir. Nov. 30, 2007) (issued as mandate Dec. 27, 2007) (Def.s' Ex. I, Dkt. No. 75–2 at 49).

**C. Application**

**1. First Two Strikes**

It is clear that the district court's *sua sponte* dismissal of plaintiff's 1993 civil rights case constitutes a strike, notwithstanding that the dismissal was issued prior to the PLRA and was issued pursuant to 28 U.S.C. § 1915(d). Former section 1915(d) [FN6] provided for *sua sponte* dismissals of cases in which the "allegation of poverty [was] untrue, or if satisfied that the action is 'frivolous or malicious.' " *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (quoting former section 1915(d)).

> FN6. The current section 1915(d) deals with service of process. 28 U.S.C. § 1915(d) (2011).

The *dismissal* of plaintiff's appeal of his 1993 case, after the district court certified that any appeal would not be taken in good faith, constitutes his second strike. A frivolous appeal in the same action constitutes a separate strike. *See Chavis v. Chappius,* 618 F.3d at 169. Although

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7073689 (N.D.N.Y.)

(Cite as: 2011 WL 7073689 (N.D.N.Y.))

the Second Circuit docket entries did not specify the reasons for dismissal, the Circuit denied plaintiff's IFP motion, which generally reflects a finding that plaintiff's appeal was frivolous. *See McGann v. Commissioner, Social Sec. Admin.,* 96 F.3d 28, 30 (2d Cir.1996) (the Second Circuit's "normal practice," where an appellant seeks IFP status on appeal, is to make an initial determination of whether the appeal surmounts the standard of "frivolousness") (citing *Leonard v. Lacy,* 88 F.3d 181, 184 (2d Cir.1996)).

**2. Subsequent Strikes**

**\*4** Defendants argue that the procedural history of plaintiff's habeas corpus petition, *Jones v. Herbert,* No. 02–CV–4075 (S.D.N.Y.) provides *five* more strikes. Defendants argue that the first *sua sponte* dismissal of plaintiff's habeas action was for "failure to state a claim," and each of the subsequent appeals/motions to vacate/motions for reconsideration were also decided based upon plaintiff's failure to state a claim, one of the bases listed in section 1915(g). Whether one or more of the dismissals listed by defendants can be considered strikes by the court requires more extensive analysis.

Although Judge Mukasey's initial order dismissing plaintiff's amended petition stated that he was dismissing the action because "petitioner fails to allege a constitutional violation," he also stated that "any appeal from this order would not be taken in good faith." (Def.s' Ex. F at 5). When a district judge certifies that an appeal would not be taken in good faith, courts have held that this constitutes a finding of frivolousness. *Martin v. Wallis,* No. 1:07–CV–175, 2008 WL 3471864, at \*4 (D.Vt., Aug.12, 2008) (citing *inter alia Chavis v. Curlee,* 9:06–CV–0049 (LEK/GHL), 2008 WL 508694, at \*2 (N.D.N.Y. Feb. 21, 2008)). For that reason and because Judge Mukasey later clarified that the original petition was dismissed "for failure to state a claim,"[FN7] the dismissal of the habeas petition would, in the normal course, count as a strike. Because the district court judge notified Jones that any appeal of the denial of his habeas petition would not be taken in good faith, the Second Circuit's dismissal of plaintiff's first appeal, following the denial of a motion for IFP status, would also normally count as another strike.

FN7. As noted above, when Judge Mukasey later denied Jones' Rule 60(b) motion to vacate, he explicitly stated that the original February 2, 2004 dismissal of Jones' habeas petition was based on 28 U.S.C. § 1915(e)(2)(B)(ii) for "failure to state a claim." (Def.s' Ex. G, Dkt. No. 75–2 at 43–45).

The court rejects the defendants' argument that plaintiff's motion to vacate or his motion for reconsideration in his prior habeas action could constitute separate "actions" or strikes. However, plaintiff's appeal of the denial of the Rule 60(b) motion to vacate, which the Second Circuit dismissed, was a separate appeal and would normally count as an additional strike. The Second Circuit denied plaintiff's motion for IFP status and denied him a certificate of appealability, finding that plaintiff failed to show that "jurists of reason would find it debatable" either that the district judge abused his discretion in denying the Rule 60(b) motion or that the underlying habeas petition stated a valid constitutional claim. (Dkt. No. 75–2 at 49–50). In this court's view, that constitutes a dismissal on grounds within the ambit of Section 1915(g). *See, e.g., Kalwasinski v. McCraken,* 09–CV–6295, 2009 WL 4042973, at \*5 (W.D.N.Y.2009) (the Circuit Court's denial of a certificate of appealability amounted to a determination that plaintiff failed to state a claim upon which relief may be granted under 28 U.S.C. § 1915(g) and constitutes a strike. *See also Bourque v. Woods,* 296 F.App'x 395, 396 (5th Cir.2008) (denying certificate of appealability for habeas petition based on a finding that "reasonable jurists" would not find it "debatable" that the petition stated a valid claim of a denial of a constitutional right while simultaneously finding that the appeal of denial of civil rights claims in the petition was "frivolous").[FN8]

FN8. As with the other dismissed appeals discussed above, the Second Circuit's denial of plaintiff's motion for IFP status would further indicate the appellate court's finding that the appeal was frivolous, which would make the dismissal a separate "strike."

**\*5** This court concludes that the dismissal of plaintiff's habeas petition and the two related appeals

Slip Copy, 2011 WL 7073689 (N.D.N.Y.)

(Cite as: 2011 WL 7073689 (N.D.N.Y.))

would normally constitute three separate strikes. However, some courts have questioned whether the dismissal of a prior petition for habeas corpus, or any appeal thereof, may count as a strike,[FN9] based on an extension of the Second Circuit's holding in *Reyes v. Keane,* 90 F.3d 676, 678 (2d Cir.1996) (concluding that the PLRA does not apply to petitions for a writ of habeas corpus), *overruled on other grounds by Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

> FN9. The same courts have held, however, that civil rights actions, masquerading as habeas corpus petitions that are dismissed as frivolous do count as strikes for purposes of the statute. *See e.g. Andrews v. King,* 398 F.3d 1113, 1123 n. 12 (9th Cir.2005); *Jennings v. Natrona County Detention Center Medical Facility,* 175 F.3d 775, 779 n. 2 (10th Cir.1999).

In *Reyes,* the Second Circuit addressed the issue of whether the filing fee payment requirements of the PLRA should be applied to habeas corpus petitions. *Id.* at 677, 678. The court answered that question in the negative, finding that a petition for habeas corpus is not a "civil action" under the PLRA. *Id.* at 678. The court reasoned that the PLRA was aimed primarily at suits, challenging prison conditions, "many of which are routinely dismissed as frivolous." *Id.*[FN10] The court also noted that there was no indication that the PLRA's elaborate filing fee payment requirements were intended to apply to habeas corpus petitions, particularly because Congress endeavored to make habeas corpus petitions easier to file by setting the filing fee at $5, compared to the much higher fee for filing a "civil action."[FN11] Finally, the Second Circuit found that, although Congress imposed several new restrictions on habeas corpus petitions in separate legislation—the Anti–Terrorism and Effective Death Penalty Act (AEDPA)—it made no change with respect to filings fees for habeas petitions in AEDPA. *Id.*

> FN10. The panel in *Reyes* also stated, however: "We do not suggest that the only civil actions to which the PLRA applies are prisoners' suits seeking relief from prison officials because of prison conditions. The PLRA covers the general run of civil actions, regardless of the claim and

regardless of the identity of the defendants." *Id.* n. 1.

> FN11. The fee for filing a civil action is currently $350.00.

The Second Circuit in *Reyes* found that the PLRA's filing fee provisions should not apply to bar a petitioner from bringing a habeas corpus petition, which it deemed not to be a "civil action" in that context. However, *Reyes* did *not* address the issue of whether a prior habeas petition that was dismissed for one of the reasons listed in section 1915(g) could be considered a "strike" under the PLRA, which could preclude the filing of a civil action-not a habeas petition—*in forma pauperis.* This court disagrees with the courts that have extended the reasoning of *Reyes* to support the proposition that, because habeas corpus petitions may not be barred by the PLRA, dismissed petitions or related appeals cannot count as strikes potentially barring IFP filings of other civil actions under section 1915(g). *See e.g. Andrews v. King,* 398 F.3d 1113, 1122 (9th Cir.2005) (dismissed habeas petitions do not count as strikes); *Jennings v. Natrona County Detention Center Medical Facility,* 175 F.3d 775, 779 (10th Cir.1999) (holding that there was "no rational reason to treat [the three strikes provision] differently from the rest of 28 U.S.C. § 1915," and thus, the district court erred in counting the dismissal of plaintiff's prior petition for habeas corpus as a strike).[FN12]

> FN12. *See also Zaire v. Welch,* 9:03–CV–629 (FJS/RFT), 2008 WL 934426, at *3 (N.D.N.Y. March 31, 2008) ("Considering the Second Circuit's analytical distinction of the filing of habeas petitions from the filing of civil actions, which are expressly regulated by the PLRA, it would be incongruous to hold that habeas petitions apply to the PLRA for purposes of the 'three-strike rule' only.").

**\*6** This court concludes that habeas petitions that are dismissed either as frivolous or for failure to state a claim, or, at least, appeals from dismissals of such petitions that are themselves dismissed on section 1915(g) grounds, may appropriately be treated as "strikes" potentially barring IFP filings of civil (non-habeas) actions under the PLRA.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7073689 (N.D.N.Y.)

(Cite as: 2011 WL 7073689 (N.D.N.Y.))

The "three strikes" statute specifically states that the plaintiff shall not bring a "civil action" or appeal a "civil action or proceeding" without paying the fee, if on three or more prior occasions, while incarcerated or detained in any facility, he has brought "an action or appeal" in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). Based on the holding in *Reyes,* it is clear that courts do not consider petitions for habeas corpus, "civil actions" under the PLRA, and that therefore, plaintiff could not be prevented from "filing" a petition for habeas corpus, based on section 1915(g).[FN13] However, the subsection of 1915(g) referring to the "strikes" only states that the plaintiff must have on three or more occasions brought "an action or appeal" that was dismissed for the listed reasons. The restrictive adjective, "civil," was removed when referring to the actions that may be considered "strikes"; thus, significantly broader language was used to define strikes.

> FN13. This is consistent with the finding that abusive or successive habeas petitions were directly addressed in the AEDPA under 28 U.S.C. § 2244(b), providing procedures for second or successive petitions.

In interpreting a statute, the court must first look to the language itself. *Torres v. Walker,* 356 F.3d 238, 242 (2d Cir.2004) (interpreting another section of the PLRA); *Greenery Rehabilitation Group, Inc. v. Hammon,* 150 F.3d 226, 231 (2d Cir.1998). Unless otherwise defined, " 'individual statutory words are assumed to carry their ordinary, contemporary, common meaning.' " *Greenery Rehab. Grp., Inc.,* 150 F.3d at 231 (quoting *Burgo v. General Dynamics Corp.,* 122 F.3d 140, 143 (2d Cir.1997). Other forms of interpretation may be used only when there is doubt or ambiguity in the statute. *Id.* (quoting *Aslandidis v. United States Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir.1993)).

It is rational to interpret the variation in the language of section 1915(g) as intentional, indicating that while the PLRA does not apply to *filing* habeas petitions, because they are not "civil actions," any "action" that has been dismissed as frivolous or for failure to state a claim may

be considered a strike, including a petition for habeas corpus. This is consistent with the purpose of the PLRA, which is to prevent the filing of IFP "civil actions" when the plaintiff has had three or more other actions dismissed as frivolous or for failure to state a claim. Whether the previous action was a habeas petition or any other action, the type of dismissal is the key to whether the dismissal counts as a strike.[FN14] The courts that have held that the dismissal of a habeas petition cannot constitute a strike under section 1915(g) did not even discuss the critical differences in the language the statute uses in describing the proceedings that would be barred by the statute—"civil action or appeal"—and the proceedings that may count as strikes—any "action or appeal." *See Andrews v. King,* 398 F.3d at 1122–23; *Jennings v. Natrona County Detention Center Medical Facility,* 175 F.3d at 779; *Zaire v. Welch,* 2008 WL 934426, at *3.

> FN14. *See also Neal v. Eddy,* No. 07–CV–1333 (FJS/DRH), 2008 WL 4527651, at *2 (N.D.N.Y. Sept.2, 2008) (dismissal of habeas corpus petition for failure to state a claim constituted a strike) (Report–Rec.), *approved,* 2008 WL 4527651, at *4 (N.D.N.Y. Oct.1, 2008); *Saunders v. Ricks,* (DNH/GHL), No. 9:03–CV–598, 2006 WL 3051792, at *3 n. 16 (N.D.N.Y. Aug. 14, 2006) (noting in dicta that plaintiff had two "strikes," one of which was the denial of a habeas corpus petition for failure to state a claim), *approved,* 2006 WL 3051792, at *1 (N.D.N.Y. Oct.18, 2006).

**\*7** Even if the court were to go beyond the clear language of section 1915(g) and consider the legislative intent behind the PLRA and AEDPA, it would not alter the conclusion that dismissals relating to a habeas petition on section 1915(g) grounds should count as strikes barring IFP filing of non-habeas civil actions. A significant factor in the reasoning of the courts that have held that the PLRA filing fee requirements should not be applied to bar the filing of a habeas action was the concern about "frustrating a storied tradition of reasonable access to habeas review." *Martin v. Bissonette,* 118 F.3d 871, 874 (1st Cir.1997). However, this court concludes that any concern that petitioners would be chilled in filing a habeas action or related appeal because a dismissal on section 1915(g)

Slip Copy, 2011 WL 7073689 (N.D.N.Y.)

(Cite as: 2011 WL 7073689 (N.D.N.Y.))

grounds could count as a strike that, in conjunction with two other strikes, could bar the future filing of a non-habeas civil action or appeal, is too attenuated to overcome the clear language of section 1915(g).

In any event, the court need not count all the strikes in *Jones v. Herbert* for plaintiff to have acquired three strikes barring IFP in *Jones v. Smith,* 9:09–CV–1058.[FN15] Even if this court did not count the dismissal of the *Jones v. Herbert* petition itself as a strike, plaintiff insisted on appealing the dismissal when the district court specifically stated that any appeal would not be taken in good faith, and the Second Circuit denied IFP status and dismissed the appeals.[FN16] Plaintiff's second appeal, of Judge Mukasey's denial of the motion to vacate under Fed.R.Civ.P. 60(b), was dismissed by the Second Circuit under essentially the same circumstances. Any appeal not taken in good faith is one "deemed objectively frivolous." *Paramore v. Filion,* 293 F.Supp.2d 285, 295 (S.D.N.Y.2003) (citing *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962)).

> FN15. As noted above, plaintiff became so abusive that Judge Mukasey stated that the court would not accept any further papers from plaintiff. (Def.s' Ex. G at 44).

> FN16. Even if a habeas petition was deemed not to be an "action" under the PLRA, which goes beyond the holding of *Reyes,* that would not mean that an appeal of the dismissal of a habeas petition would not count as an "appeal" in section 1915(g) description of a strike.

Thus, even if this court did not count the dismissal of plaintiff's original petition for habeas corpus, plaintiff has had at least two strikes relating to the frivolous *appeals* in the *Jones v. Herbert* habeas action, in addition to the two strikes related to plaintiff's 1993 civil action and the related 1994 appeal. *See, e.g., Kalwasinski v. McCraken,* 2009 WL 4042973, at *5 (counting as a strike the denial of a certificate of appealability and dismissal of an appeal relating to a habeas petition). The court therefore finds that plaintiff has acquired at least three strikes for purposes of section 1915(g), and will recommend that plaintiff's IFP status be revoked, and that *Jones v. Smith,*

9:09–CV–1058 (plaintiff's remaining IFP action) be dismissed if plaintiff does not pay the $350 filing fee within forty-five (45) days.[FN17]

> FN17. There is no issue of "imminent danger" in this case.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that defendants' motion to dismiss in 10–CV–1331 (Dkt. No. 25) is **TERMINATED AS MOOT** because plaintiff paid the filing fee on December 1, 2011, and it is

**\*8 RECOMMENDED,** that defendants motion to dismiss in 09–CV–1058 (Dkt. No. 75) be GRANTED, and it is

**RECOMMENDED,** that plaintiff's IFP status be **REVOKED,** and that *Jones v. Smith,* 9:09–CV–1058 be **DISMISSED,** unless plaintiff pays the $ 350.00 filing fee within **FORTY–FIVE (45) DAYS** of the date of any order approving this Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2011.

Jones v. Smith
Slip Copy, 2011 WL 7073689 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Anthony G. GILL, Plaintiff,
v.
Chris PIDLYPCHAK, Correction Officer and T.G.
Dygert, Correction Officer, Defendants.
No. 902-CV-1460 (FJS/RFT).

Dec. 19, 2006.
Anthony G. Gill, of counsel, Comstock, NY, Plaintiff, Pro
Se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Douglas Goglia, Esq., Asst. Attorney General, of
counsel, Albany, NY, for Defendants.

*DECISION AND ORDER*

FREDERICK J. SCULLIN, JR., S.J.

**\*1** The above-captioned matter having been presented
to me by the Report-Recommendation of Magistrate Judge
Randolph F. Treece filed November 20, 2006 and the
Court having reviewed the Report-Recommendation and
the entire file in this matter, and no objections to said
Report-Recommendation having been filed, it is hereby

**ORDERED,** that the Report-Recommendation of
Magistrate Judge Randolph F. Treece filed November 20,
2006 is **ACCEPTED** in its entirety, for the reasons stated
therein; and it is further

**ORDERED,** that the Order granting Gill's IFP status
is **VACATED;** and it is further

**ORDERED,** that Defendants' Letter-Motion seeking
dismissal of Gill's Complaint pursuant to 28 U.S.C. §
1915(g) is **GRANTED** unless Gill pays the filing fee of
$150.00 within thirty days of this final order.

**IT IS SO ORDERED.**

RANDOLPH F. TREECE, United States Magistrate
Judge.

*REPORT-RECOMMENDATION and ORDER*
**I. INTRODUCTION**

Pro se Plaintiff Anthony Gill brings this civil action
pursuant to 42 U.S.C. § 1983, alleging Defendants
violated his civil rights while he was incarcerated at the
Auburn Correctional Facility. Dkt. No. 1, Compl. [FN1]
Specifically, Gills alleges Defendants Pidlypchak and
Dygert filed false misbehavior reports against him and
harassed him in retaliation for the filing of numerous
institutional grievances against them and a civil lawsuit
against Pidlypchak for smoking violations. Compl., Pl.'s
Statement of Facts.

> FN1. On December 23, 2002, Defendants filed a
> Motion to Dismiss Gill's Complaint pursuant to
> FED.R.CIV.P. 12(b)(6) for failure to state a
> claim upon which relief can be granted. Dkt. No.
> 6, Mot. to Dismiss. By Order of the Honorable
> Joseph M. Hood, United States District Judge for
> the Eastern District of Kentucky sitting by
> designation, Defendants' Motion was granted
> dismissing Gill's complaint with prejudice. Dkt.
> No. 17, Decision & Order, dated July 28, 2003.
> Judgment was entered on August 1, 2003 and
> Gill appealed. Dkt. Nos. 18 & 19, Notice of
> Appeal, dated Aug. 4, 2003. The Second Circuit
> affirmed the District Court's dismissal of Gill's
> Eighth Amendment claim, but vacated the
> Judgment of the District Court dismissing Gill's
> First Amendment claim and remanded the action
> back to the District Court. *Gill v. Pidlypchak,*
> 389 F.3d 379 (2d Cir.2004).

Presently before the Court is Defendants'
Letter-Motion requesting an order revoking Gill's *in forma
pauperis* (IFP) status and conditionally dismissing this
action pursuant to 28 U.S.C. § 1915(g) pending Gill's
prompt payment of the statutory filing fee of $150.00. [FN2]
Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1.
Gill opposes the motion. Dkt. No. 38, Pl.'s Lt.-Resp.,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

dated July 21, 2006. For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

> FN2. Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight." Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

## II. DISCUSSION

### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis.* 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2).

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (PLRA) of 1996, which renders several restrictions on a prisoner's ability to exploit the justice system. One such mechanism is the so-called "three strikes rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been dismissed as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.*

In recognizing the legitimate government interests fostered by the PLRA amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to file suit at taxpayers' expense. *See Anderson v. Coughlin,* 700 F.2d 37, 42 (2d Cir.1983) (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973).

> *Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases count towards the three strikes rule, a court may look to dismissals which predated the enactment of the PLRA. *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000). The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the prisoner's case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Gill's "Three Strikes"

As noted by the Second Circuit, Gill "is no stranger ... to the federal courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). He "has commenced at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta,* 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n. 2 (N.D.N.Y.); has filed at least thirty-nine (39) different lawsuits in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[FN3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not entitled to "the special solicitude afforded [to] *pro se* litigants [.]" *Gill v. Riddick,* 2005 WL 755745, at *2

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

(N.D.N.Y. Mar. 31, 2005).

FN3. *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) *(habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

When Gill commenced this action on November 20, 2002, he had already acquired at least three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v.*

*Accetulli,* 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center,* 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre,* 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11); and *Gill v. Padilla,* 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11).[FN4] Defs.' Lt.-Mot. at p. 2.

FN4. In their Letter-Motion, Defendants' assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n. 4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, *"Gill v. Anderson* and *Gill v. Pflueger* [,] ... were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

**C. Application of *Snider v. Melindez* and *DeLeon v. Doe***

**\*3** Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the Second Circuit in *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999) and clarified in *DeLeon v. Doe,* 361 F.3d 93 (2d

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Cir.2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w [h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider*." Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez,* the Second Circuit held that the "three strikes rule" was intended to apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez,* 199 F.3d at 111.[FN5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily render a determination on the merits as, for example, a dismissal for frivolousness would. *See id.* at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)).

> FN5. In *Snider,* the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

In *DeLeon v. Doe,* the Second Circuit, in upholding its ruling in *Snider,* reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).' " *Id.*

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First,

although *Snider* is clear in its application to those cases dismissed on the merits, the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

**\*4** Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g) ] is properly considered *at the time an action is dismissed.*" *Id.* (citing *Snider v. Melindez,* 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these strikes one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at a proper time-qualify as strikes under the terms of § 1915(g)."[FN6] *Id.*

> FN6. The Second Circuit in *DeLeon* based its holding on its rationale in *Snider,* which reads:
>
> The designation of strikes has no practical consequences until a defendant in a prisoner's lawsuit raises the contention that the prisoner's suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three strikes. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three strikes. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.
>
> *DeLeon v. Doe,* 361 F.3d at 95 (quoting *Snider v. Melindez,* 199 F.3d at 115).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

The Second Circuit also stated that "[c]ontemporanous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id.* (quoting *Snider v. Melindez*, 199 F.3d at 115, n. 4).

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for purposes of the "three strikes rule."

Although the Southern District in deciding *Accettulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accettulli*, 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y .) (citing *Neitzke v. Williams*, 490 U.S. at 325); *Gill v. Anna M. Kross Center*, 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p. 2 (S.D.N.Y.) (citing *Neitzke v. Williams*, 490 U.S. at 325). Additionally, in *Kross,* the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accettulli* and *Kross* cases "were dismissed due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the dismissals of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "strikes" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were dismissed by the Northern District for failure to prosecute pursuant to Rule 11 of the Federal Rules of Civil Procedure.[FN7] By his own admission, Gill concedes that these two cases were dismissed pursuant to FED.R.CIV.P. 11. Irrespective of specific language used

in the District's Decisions and Orders dismissing these actions, we find that a Rule 11 dismissal is a dismissal on the merits. Therefore, these two cases would also each qualify as "strikes" against the Plaintiff.

> FN7. A history of failure to prosecute is akin to the filing of a frivolous claim.

From the discussion and analysis above, it is clear that these types of dismissals are precisely what Congress had in mind when it enacted the PLRA, hoping to discourage and limit the amount of *frivolous* lawsuits brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "strikes" at the time he commenced the present action.

### D. Exception to the "Three Strikes Rule"

**\*5** Notwithstanding prior dismissals, an inmate can overcome the "three strikes rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir.2002) ( "[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

### E. Revoking Gill's IFP Status

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

proceedings, specifically in their Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006.FN8 Pl.'s Lt.-Resp. at p. 4.

> FN8. Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge,* 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998)).

In light of the foregoing, it is recommended that the Order granting IFP status to Gill be **vacated** and that Gill's Complaint be dismissed unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby
**RECOMMENDED,** that the Order granting Gill's IFP status (Dkt. No. 4) be VACATED; and it is further

**RECOMMENDED** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be **GRANTED** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court; and it is further

**\*6 ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72, 6(a) & 6(e).

N.D.N.Y.,2006.

Gill v. Pidlypchak
Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



--- F.Supp.2d ----, 2011 WL 5101376 (D.D.C.)

(Cite as: 2011 WL 5101376 (D.D.C.))

Only the Westlaw citation is currently available.

United States District Court,

District of Columbia.
Terry JONES, Plaintiff,
v.
UNITED STATES of America, Defendants.
Civil Action No. 11–1158(ESH).

Oct. 27, 2011.

**Background:** Federal prisoner brought action against United States under Federal Tort Claims Act (FTCA), alleging negligence and medical malpractice by federal Bureau of Prisons (BOP) employees. Government moved to dismiss, or alternatively, to transfer venue.

**Holdings:** The District Court, Ellen Segal Huvelle, J., held that:

(1) District of Columbia was improper venue;
(2) Eastern District of Virginia was not desirable venue for transfer of improperly venued FTCA action; and
(3) convenience factors and interests of justice supported transfer of action to Northern District of West Virginia.

Motion to transfer venue granted.

West Headnotes

**[1] Federal Courts 170B** ⚖ **1041**

170B Federal Courts

  170BXI Courts of District of Columbia
    170BXI(A) In General; District Court
      170Bk1040 Procedure in District Court
        170Bk1041 k. Venue and change of venue.
Most Cited Cases
    Prisoner "resided" where he was incarcerated, rather than where he lived prior to his incarceration, for purposes of Federal Tort Claims Act (FTCA), and thus District of

Columbia was improper venue for prisoner's FTCA action, even though prisoner had previously resided in District of Columbia, since prisoner was incarcerated in Eastern District of Virginia at time he filed suit. 28 U.S.C.A. §§ 1402(b), 1404(a), 1406(a).

**[2] Federal Courts 170B** ⚖ **97**

170B Federal Courts

  170BII Venue
    170BII(A) In General
      170Bk97 k. Determination of venue questions.
Most Cited Cases
**Federal Courts 170B** ⚖ **121**

170B Federal Courts

  170BII Venue
    170BII(B) Change of Venue
      170BII(B)2 Venue Laid in Wrong Forum
        170Bk121 k. In general. Most Cited Cases
    Generally, transfer of case to appropriate judicial district is favored over dismissal of case for improper venue. 28 U.S.C.A. § 1406(a).

**[3] Federal Courts 170B** ⚖ **1041**

170B Federal Courts

  170BXI Courts of District of Columbia
    170BXI(A) In General; District Court
      170Bk1040 Procedure in District Court
        170Bk1041 k. Venue and change of venue.
Most Cited Cases
    Eastern District of Virginia was not desirable venue for transfer of prisoner's improperly venued Federal Tort Claims Act (FTCA) action brought in the District of Columbia, even though prisoner was incarcerated in Eastern District of Virginia at time he filed suit, since Fourth Circuit had not decided issue of whether prisoners resided in district where they were incarcerated, and it was not clear that Eastern District of Virginia would have

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 5101376 (D.D.C.)

(Cite as: 2011 WL 5101376 (D.D.C.))

agreed that case "could have been brought" there under statute governing transfer of venue. 28 U.S.C.A. §§ 1402(b), 1404(a), 1406(a).

**[4]** Federal Courts 170B ⟶ 1041

170B Federal Courts

    170BXI Courts of District of Columbia
       170BXI(A) In General; District Court
         170Bk1040 Procedure in District Court
           170Bk1041 k. Venue and change of venue. Most Cited Cases

Convenience and interests of justice supported transfer of prisoner's Federal Tort Claims Act (FTCA) action from District of Columbia to Northern District of West Virginia, even though prisoner was incarcerated in Eastern District of Virginia and had resided in District of Columbia prior to his incarceration, since majority of events giving rise to prisoner's claims had occurred in Northern District of West Virginia, and Northern District of West Virginia was significantly closer to prisoner's current place of incarceration than was the District of Columbia. 28 U.S.C.A. §§ 1402(b), 1404(a), 1406(a).

**[5]** Federal Courts 170B ⟶ 87.5

170B Federal Courts

    170BII Venue
       170BII(A) In General
         170Bk87 District Where Claim Arose
           170Bk87.5 k. In general. Most Cited Cases

For purposes of the Federal Tort Claim Act's (FTCA) venue provision, the judicial district wherein the act occurred is the district in which sufficient activities giving rise to the plaintiff's cause of action took place. 28 U.S.C.A. § 1402(b).

**[6]** Federal Courts 170B ⟶ 101

170B Federal Courts

    170BII Venue
       170BII(B) Change of Venue
         170BII(B)1 In General; Venue Laid in Proper Forum

           170Bk101 k. In general; convenience and interest of justice. Most Cited Cases
**Federal Courts 170B ⟶ 104**

170B Federal Courts

    170BII Venue
       170BII(B) Change of Venue
         170BII(B)1 In General; Venue Laid in Proper Forum

           170Bk104 k. Matters considered. Most Cited Cases

In deciding among proper venues, a court must consider the following factors: the convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory processes to compel the attendance of unwilling witnesses; the amount of expense for the willing witnesses; the relative congestion of the calendars of potential transferor and transferee courts; and other practical aspects of expeditiously and conveniently conducting a trial. 28 U.S.C.A. §§ 1402(b), 1404(a), 1406(a).

Ivy Ann Finkenstadt, Washington Lawyers' Committee for Civil Rights and Urba MarkAaron Smith, Winston & Strawn LLP, Washington, DC, Plaintiff.

Benton Gregory Peterson, United States Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM OPINION

ELLEN SEGAL HUVELLE, District Judge.

  ***1** Plaintiff Terry Jones, a prisoner currently incarcerated at the Federal Correctional Institution of Petersburg, Virginia, brings this action against defendant United States of America under the Federal Tort Claims Act, claiming negligence and medical malpractice by federal Bureau of Prisons employees. Defendant has moved to dismiss for improper venue pursuant to Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, defendant's motion to transfer venue will be granted and the case will be transferred to the United States District Court for the Northern District of West Virginia.

### BACKGROUND

--- F.Supp.2d ----, 2011 WL 5101376 (D.D.C.)

(Cite as: 2011 WL 5101376 (D.D.C.))

# I. FACTS [FN1]

Plaintiff is a prisoner in the custody of the federal Bureau of Prisons who is serving a prison sentence imposed by the Superior Court for the District of Columbia. (First Am. Compl. ¶ 10.) Prior to his incarceration, he was a resident of the District of Columbia. (*Id.* ¶ 10.)

**A. USP Hazelton: December 20, 2007—November 4, 2008**

In December 2007, plaintiff was incarcerated at USP Hazelton in the Northern District of West Virginia. (*Id.* ¶ 1.) On December 20, 2007, he was injured in a riot on his unit when he slipped on another inmate's blood on a metal staircase and fell on his back. (*Id.* ¶¶ 1–2, 17–33.) Following this incident, plaintiff "sought medical attention for numbness and tingling in his fingers," and was advised to "stop doing sit-ups." (*Id.* ¶¶ 2, 34–35.) Over the next ten months, plaintiff "repeatedly sought medical attention, asked for and was denied an MRI, asked for and was denied an orthopedic or other specialist consultation, and was never treated for his back injury." (*Id.* ¶¶ 3, 36–46, 51–52.) Finally, on November 4, 2008, plaintiff was "scheduled for an orthopedic consultation," but that same day, before the consultation occurred, plaintiff was transferred out of Hazelton. (*Id.* ¶¶ 4, 48–49.)

**B. Transfer from USP Hazelton to USP Tucson, Arizona**

From USP Hazelton, plaintiff was flown to the Federal Transfer Center in Oklahoma City, Oklahoma, and then taken on a seventeen-hour bus ride to USP Tucson, Arizona. (*Id.* ¶¶ 4, 54, 57.) Due to "extreme pain and weakness," plaintiff required assistance in getting on and off the plane. (*Id.* ¶ 54.) The bus ride, during which plaintiff was in leg and hand restraints, caused plaintiff excruciating pain and, when he arrived at USP Tucson, he "was unable to walk and could not exit the bus under his own power." (*Id.* ¶¶ 4, 57–60.)

**C. USP Tucson: November 7, 2008–March 11, 2009**

Over the next fourteen months at USP Tucson, plaintiff's "condition continued to deteriorate," but his requests for treatment for his back pain were denied and he was given only short-term pain medication. (*Id.* ¶¶ 5, 65–73, 77–78.) On March 11, 2009, plaintiff "experienced lightning-like, shooting pain in his back and collapsed on the recreation yard." (*Id.* ¶¶ 6, 74.) He was transferred to an outside hospital where "testing revealed that he suffered from extensive spinal damage, including severe spinal stenosis, degeneration of the spinal discs, and disk protrusion." (*Id.* ¶¶ 6, 75–76) On March 13, 2009, or thereabout, plaintiff had back surgery to prevent further worsening of his injuries. (*Id.* ¶¶ 6, 79.)

**D. USP Petersburg**

**\*2** At some later date, plaintiff was transferred to USP Petersburg in the Eastern District of Virginia, where he was residing at the time he filed the instant complaint. He "remains unable to walk without the use of a walker, cannot sit for long periods of time, has muscular atrophy in his upper arms, and daily experiences pain in his back and left leg." (*Id.* ¶¶ 7, 80–81.)

# II. PROCEDURAL HISTORY

Based on the above-described events (set forth in greater detail in plaintiff's amended complaint), plaintiff filed this FTCA case claiming (1) negligence by USP Hazelton prison staff and officials in failing to protect him from injury on December 20, 2007 (Count I) (¶¶ 82–88); (2) medical malpractice by USP Hazelton medical professionals in improperly diagnosing and treating the injury he sustained on December 20, 2007 (Count II) (¶¶ 89–93); (3) medical malpractice by USP Tucson medical professionals in improperly diagnosing and treating injuries stemming from the December 20, 2007 injury (Count III) (¶¶ 94–98); and (4) negligence by BOP employees in mistreating plaintiff during his transfer from USP Hazelton to USP Tucson (Count IV) (¶¶ 99–103.) Defendant has moved to dismiss or, in the alternative, to transfer on the ground that the District of Columbia is not a proper venue.

# ANALYSIS

# I. IMPROPER VENUE

[1] Claims brought under the FTCA "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiff's complaint asserts that venue is proper in this district solely because he is a "resident of the District of Columbia." [FN2] (First Am. Compl. ¶ 9.) As defendant's motion points out, however, the Court of Appeals for the District of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 5101376 (D.D.C.)

(Cite as: 2011 WL 5101376 (D.D.C.))

Columbia Circuit has held that for venue purposes, a prisoner "resides" where he is incarcerated, not where he lived prior to his incarceration. *See In re Pope,* 580 F.2d 620 (D.C.Cir.1978). Despite plaintiff's arguments to the contrary, this remains the law in this Circuit and it is binding on this Court. *See, e.g., Roman–Salgado v. Holder,* 730 F.Supp.2d 126, 130 (D.D.C.2010). As noted, plaintiff is currently incarcerated in the Eastern District of Virginia. Accordingly, under the law of this Circuit, the District of Columbia is not a proper venue for this action.

**II. TRANSFER OF VENUE**

[2] If venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As a general matter, a transfer of the case is favored over a dismissal. *See El v. Belden,* 360 F.Supp.2d 90, 93 (D.D.C.2004). Defendant suggests that venue would be proper in either the Eastern District of Virginia, where plaintiff is incarcerated, the Northern District of West Virginia, where USP Hazelton is located, or in the District of Arizona, where USP Tucson is located.

**A. Eastern District of Virginia**

*3 [3] Applying the law of this Circuit that a prisoner resides where he is incarcerated, venue would be proper in the Eastern District of Virginia. *See supra.* However, that is not the law in most other circuits, *see, e.g., Holmes v. United States Bd. of Parole,* 541 F.2d 1243, 1248–49 (7th Cir.1976); *Ellingburg v. Connett,* 457 F.2d 240, 241 (5th Cir.1972); *Urban Indus. v. Thevis,* 670 F.2d 981, 986 (11th Cir.1982); *Brimer v. Levi,* 555 F.2d 656 (8th Cir.1977); *Flanagan v. Shively,* 783 F.Supp. 922, 935 (M.D.Pa.), *aff'd,* 980 F.2d 722 (3d Cir.1992), and the Fourth Circuit has not decided the issue. *See Royer v. Federal Bureau of Prisons,* 2010 WL 4827727, at *5 (E.D.Va.2010) ("some courts have found that prisoners reside in the district where they are domiciled for ... venue purposes, [but] the Fourth Circuit has never squarely addressed the matter") (citing *United States v. Pugh,* 69 Fed.Appx. 628 (4th Cir.2003)). Thus, it is not clear that the Eastern District of Virginia would agree that this case "could have been brought" there. For this reason, transferring this case to the Eastern District of Virginia is not a desirable option. *See Roman–Salgado,* 730 F.Supp.2d at 130 (noting that this disagreement among the

Circuits as to where an incarcerated prisoner resides for venue purposes is "particularly problematic" when it comes to deciding where to transfer a case).

**B. Northern District of West Virginia / District of Arizona**

[4][5] For purposes of the FTCA, the judicial district "wherein the act ... occurred" is the district in which "sufficient activities giving rise to the plaintiff's cause of action took place." *Zakiya v. United States,* 267 F.Supp.2d 47, 58 (D.D.C.2003) (citing *Franz v. United States,* 591 F.Supp. 374, 378 (D.D.C.1984)); *see also Sanchez v. United States,* 600 F.Supp.2d 19 (D.D.C.2009); *Tildon v. Alexander,* 587 F.Supp.2d 242 (D.D.C.2008). Applying this standard to the allegations of the complaint, venue would be proper in either the Northern District of West Virginia or the District of Arizona.

[6] In deciding among proper venues, a court must consider the following factors:

> [T]he convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory processes to compel the attendance of unwilling witnesses; the amount of expense for the willing witnesses; the relative congestion of the calendars of potential transferor and transferee courts; and other practical aspects of expeditiously and conveniently conducting a trial.

> *SEC v. Page Airways,* 464 F.Supp. 461, 463 (D.D.C.1978); *see also* 28 U.S.C. § 1404(a) (court may transfer for the "convenience of parties and witnesses, in the interest of justice"). Considering these factors, the Northern District of West Virginia is clearly the more convenient forum as the majority of events giving rise to plaintiff's claims occurred there and it is significantly closer to plaintiff's current place of incarceration.

**CONCLUSION**

*4 Accordingly, and for the reasons stated above, the Court will grant defendant's motion to transfer venue and transfer this case to the Northern District of West Virginia.

FN1. For the purpose of deciding a motion to dismiss for lack of proper venue under Rule 12(b)(3), the Court accepts as true "the well-pled factual allegations regarding venue." *Varma v.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 5101376 (D.D.C.)

(Cite as: 2011 WL 5101376 (D.D.C.))

*Gutierrez,* 421 F.Supp.2d 110, 112 (D.D.C.2006).

FN2. The parties agree that no "act or omission complained of occurred" in the District of Columbia.

D.D.C.,2011.

Jones v. U.S.
--- F.Supp.2d ----, 2011 WL 5101376 (D.D.C.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 4527651 (N.D.N.Y.)

(Cite as: 2008 WL 4527651 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Christopher NEAL, Plaintiff,
v.
M. EDDY, Correctional Officer, Gouverneur
Correctional Facility; Kogut, Correctional Officer,
Gouverneur Correctional Facility; N. Martin, Senior
Counselor/Hearing Officer, Gouverneur Correctional
Facility; and James A. Taylor, Superintendent,
Gouverneur Correctional Facility, Defendants.
No. 07-CV-1333 (FJS/DRH).

Oct. 1, 2008.
Christopher Neal, Romulus, NY, pro se.

Hon. Andrew M. Cuomo, New York State Attorney
General, Michael G. Mccartin, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

***DECISION & ORDER***

FREDERICK J. SCULLIN, JR., Senior District Judge.
    *4 Presently before the Court is Magistrate Judge
David R. Homer's September 2, 2008
Report-Recommendation in which he recommends that
defendants' motion to dismiss be granted; the order
granting Neal's IFP status be vacated and the complaint be
dismissed as to all defendants and all claims unless Neal
pays the filing fee of $350.00 within thirty (30) days of the
entry of a final order by the District Court. Magistrate
Judge Homer's Report-Recommendation was mailed to
plaintiff's last known address, but was returned to the
Clerk's Office marked, "Not At This Facility-Return to
Sender." Under Local Rule 41.2(b), failure to notify the
Court of a change of address as required by Local Rule
10.1(b) may result in dismissal of the action. Therefore, in
light of Plaintiff's failure to notify the Court of his change
of address, the Court hereby
    **ORDERS** that the Report-Recommendation filed by

Magistrate Judge David R. Homer on September 2, 2008
is **ACCEPTED** in its entirety for the reasons stated
therein, and the Court further

    **ORDERS** that the order granting Neal's IFP status is
**VACATED,** and the court further

    **ORDERS** that *unless* Neal pays the filing fee of
$350.00 within (30) days of the entry of this order, the
Clerk of the Court shall enter judgment in favor of
defendants and close this case without further Order of
this Court.

    **IT IS SO ORDERED.**

DAVID R. HOMER, United States Magistrate Judge.

**REPORT-RECOMMENDATION AND ORDER**FN1
    FN1. This matter was referred to the undersigned
    for report and recommendation pursuant to 28
    U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

    *1 Plaintiff pro se Christopher Neal ("Neal"), an
inmate in the custody of the New York State Department
of Correctional Services ("DOCS"), brings this action
pursuant to 42 U.S.C. § 1983 alleging that defendants,
four DOCS employees, violated his constitutional rights
under the First, Eighth, and Fourteenth Amendments. Am.
Compl. (Docket No. 5). Presently pending is defendants'
motion to dismiss pursuant to 28 U.S.C. § 1915(g).
Docket No. 18. Neal opposes the motion. Docket No. 22.
For the following reasons, it is recommended that
defendants' motion be granted.

**I. Background**

    Neal is familiar with the litigation process, having
filed thirteen federal actions in courts in the Second
Circuit since 1997. *See U.S. Party/Case Index* (visited
A u g u s t   2 7 ,   2 0 0 8 )
<http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl>.

    Neal proceeds in this action *in forma pauperis*
("IFP"). At all relevant times, Neal was incarcerated at

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4527651 (N.D.N.Y.)

(Cite as: 2008 WL 4527651 (N.D.N.Y.))

Gouverneur Correctional Facility ("Gouverneur"). While there, Neal twice sought to be placed into protective custody as "he feared correctional officers where [sic] trying to get him to loose [sic] his date to go home," his requests were denied, and he subsequently filed inmate grievances. Am. Compl. ¶¶ 10-12, 22-23. In response to each grievance, Neal claims he was issued a false and retaliatory misbehavior report from defendants Kogut and Eddy. *Id.* Neal further alleges that he was denied due process in the disciplinary hearings on the reports, he was convicted of the charges, and his disciplinary sentences included time in keeplock [FN2] and the Special Housing Unit ("SHU"),[FN3] loss of privileges, and a delay of his tentative parole date. *Id.* ¶¶ 14, 26-44.

> FN2. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (2007).

> FN3. SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ...." N.Y. Comp.Codes R. & Regs. tit. 7, § 300.2(b) (2007). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

## II. Motion to Dismiss

Defendants seek dismissal of the complaint under 28 U.S.C. § 1915(g), which bars prisoners from proceeding IFP after three or more previous claims have been dismissed as frivolous, malicious, or for failing to state a claim. *See* 28 U.S.C. § 1915(g) (2006).[FN4] Frivolous claims "lack[ ] an arguable basis either in law or in fact." *Tafari v. Hues,* 473 F.3d 440, 442 (2d Cir.2007) (*quoting Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). Malicious claims are filed with the intent to hurt or harm another. *Id.* (citations omitted). The failure to state a claim applies a parallel definition from Fed.R.Civ.P. 12(b)(6), but "it does not follow that a complaint which falls afoul of the [12(b)(6) motion to dismiss] standard will invariably fall afoul of the [§ 1915(g) standard]." *Neitzke,* 490 U.S. at 326; *see also Tafari,* 473 F.3d at 442 (citations omitted).

> FN4. The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1995), which had as its principal purpose deterring frivolous prisoner litigation. *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997).

This "three-strikes" provision contains a narrow exception which permits suits, notwithstanding prior dismissals, when the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Lewis v. Sullivan,* 279 F.3d 526, 531 (7th Cir.2002) (applying imminent danger exception "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.') In deciding whether application of the exception is warranted, "a court must examine the available pleadings, construed in the light most favorable to the [prisoner] ...." *Gamble v. Maynard,* No. 06-CV-1543 (DNH/DEP), 2008 WL 150364, at *4 (N.D.N.Y. Jan.14, 2008) (citations omitted). "This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes on the basis of past harm." *Id.* (citations omitted). This harm must also be real, serious, and not "merely speculative or hypothetical." *Id.* (citations omitted).

**\*2** Here, of the thirteen cases Neal has filed, at least three have been dismissed as frivolous or for failing to state a claim. *See Neal v. Walker,* No. 00-CV-6376CJS (Fe) (W.D.N.Y. Mar. 28, 2003) (Docket No. 18-4) (hereinafter *Neal I* ); *Neal v. Griffin,* No. 99-CV-1792 (TJM/GLS) (N.D.N.Y. Mar. 23, 2001) (Docket No. 18-3) (hereinafter *Neal II* ); *Neal v. Goord,* No. 99-CV-515 (GJD) (N.D.N.Y. Feb. 23, 2001) (Docket No. 18-5) (hereinafter *Nelson III* ).

In *Neal I,* Neal brought a habeas corpus petition pursuant to 28 U.S.C. § 2255 challenging a prison disciplinary proceeding and the respondent moved to dismiss for failure to state claim in accordance with Fed.R.Civ.P. 12(b)(6). The record of that case established

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4527651 (N.D.N.Y.)

(Cite as: 2008 WL 4527651 (N.D.N.Y.))

that Neal had previously brought an action in state court on the same grounds, the state court had dismissed, and Neal had appealed but then withdrawn his appeal. In the federal action which followed, respondent contended that Neal's failure to perfect his state court appeal constituted a failure to exhaust state court remedies as required for federal habeas corpus relief and that Neal had failed to satisfy any of the exceptions to this procedural default. The district court agreed and granted to the motion to dismiss for failure to state a claim. *Neal I* at 9. The dismissal on this ground constituted a strike under § 1915(g).[FN5] *See Tafari,* 473 F.2d at 442.

> FN5. There is, of course, a material difference between the dismissal of a habeas corpus petition for failure to exhaust state court remedies and the dismissal of a claim under 42 U.S.C. § 1983 for failure to exhaust administrative remedies. *See Preiser v. Rodriguez,* 411 U.S. 475, 489-90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (holding that the exhaustion requirements for habeas corpus relief may not be circumvented by suing under § 183 for injunctive or declaratory relief). The failure to exhaust state court remedies may bar a habeas corpus action as a procedural default even where state court remedies are not longer available to a petitioner. *See Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 633 (2d Cir.2001); *Sams v. Donelli,* No. 07 Civ. 4600(DLC), 2008 WL 2939526, at *3 n. 2 (S.D.N.Y. July 28, 2008). Such a procedural default constitutes a failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Neal I.* However, the failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) permits a plaintiff to pursue those remedies in a prison administrative process and then return to federal court to pursue his claim under § 1983. Such a remediable failure to exhaust affords no basis for a strike under § 1915(g). *See Snider v. Melindez,* 189 F.3d 108, 115 (2d Cir.1999).

In *Neal II,* the "favorable disposition"rule [FN6] "appl[ied] and [Neal's] causes of action [we]re barred," constituting a strike for IFP purposes since the bar was applicable and Neal failed to state a claim on which relief

could be granted. *See Kulakov v. INS,* No. 06-CV-754 (CS), 2007 WL 1360728, at *1 (W.D.N.Y. May 7, 2007) (*citing* 28 U.S.C. § 1915(e)(2)(B)(ii)). Lastly, in *Nelson III,* the mandate from the Second Circuit stated that "the motion is denied [as Neal] has not shown that this appeal has likely merit ... [thus] the appeal is dismissed as frivolous because it lacks an arguable basis in law or fact." *See Andrews v. King,* 398 F.3d 1113, 1120 (9th Cir.2005) (holding that "defendants must produce documentary evidence ... to conclude that the plaintiff has filed at least three prior actions that were dismissed [as strikes and that] ... docket records may be sufficient ... [if they indicate] that a prior case was dismissed because it was frivolous, malicious or fail[ed] to state a claim.") (internal quotations and citations omitted). Thus, it is clear that Neal has had at least three cases previously dismissed as frivolous or failing to state a claim.

> FN6. *See Edwards v. Balisok,* 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (extending to prison disciplinary proceedings the rule that the results of a prison disciplinary proceedings may not be challenged on due process grounds where a successful challenge would "necessarily imply the invalidity of {a disciplinary} conviction or sentence" and citing Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).

Neal attempts to plead facts sufficient to place him within the imminent danger exception. Neal essentially makes three claims for imminent danger. The first is that the corrections officers at Gouverneur were attempting to interfere with his potential release date. Am. Compl. ¶ 22. However, Neal has since been transferred to Five Points Correctional Facility and is no longer in contact with the corrections officers who were allegedly jeopardizing his release date. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998) (holding that the imminent danger exception is inapplicable if it does not "involve [the] present incarceration."). Thus, the exception does not apply.

**\*3** The second argument was that, since his potential release date was not what he initially thought it would be, Neal was required "to continue to endure being

Not Reported in F.Supp.2d, 2008 WL 4527651 (N.D.N.Y.)

(Cite as: 2008 WL 4527651 (N.D.N.Y.))

imprisoned longer in [DOCS]." Docket No. 22-1 at 4. These conclusory and speculative allegations are insufficient to allege an imminent harm because:

> [w]hile maximum security prisons may be dangerous places for the very reasons that plaintiff states in his complaint, [it] ... does not allege that he faces any specific danger ...; [r]ather, he speculates that he, like any other inmate at the facility, faces potential danger at the hands of other inmates. Were this Court to hold that such speculation is sufficient to satisfy the "imminent danger" requirement, this Court would effectively create a blanket exception to the "three strikes" rule for all inmates of maximum security prisons.

*Pettus v. Mangano,* No. 05-CV-1834 (RJD), 2005 WL 1123761, at *1 (E.D.N.Y. May 9, 2005). Thus, the claim that an extended time in prison subjects a plaintiff to imminent danger is insufficient.

The last was that Neal "was put in involuntary protective custody because [his] life has been threatened by Muslims who are or were at Five Points Correctional Facility." Docket No. 22-1 at 6. However, as discussed *supra,* the allegations which form the basis of the amended complaint occurred during Neal's incarceration at Gouverneur. Thus, the events resulting in Neal's placement in involuntary protective custody at Five Points clearly did not occur simultaneously with the filing of the instant complaint as the events each occurred at separate correctional facilities.

Additionally, dismissal is not precluded by the fact that Neal has already been granted IFP status in this action. Docket Nos. 2, 7. When a court becomes aware of three prior strikes only after granting IFP status, it is appropriate to revoke that status and bar the complaint under § 1915(g). *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998).

Therefore, it is recommended that the order granting IFP status to Neal be vacated and that Neal's amended complaint be dismissed unless he pays the filing fee of $350.00 within thirty (30) days of the entry of a final order by the district court.

## III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Docket No. 18) be **GRANTED** and that:
1. The order granting Neal's IFP status (Docket No. 7) be **VACATED;** and

2. The complaint be **DISMISSED** as to all defendants and all claims *unless*

Neal pays the filing fee of $350.00 within thirty (30) days of the entry of a final order by the district court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.

Neal v. Eddy
Not Reported in F.Supp.2d, 2008 WL 4527651 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Antonio SAUNDERS, Plaintiff,
v.
Superintendent RICKS; Commissioner Goord,
Commissioner of Corrections; Captain Racette; Sergeant
Sinical; Nurse Buffham; Officer Cook; Officer Woods,
Correctional Officer; Lt. Uhler, Lt. at Disciplinary
Hearing; John Doe, Officer; and Nurse Rushford,
Defendants.
No. 9:03-CV-598.

Oct. 18, 2006.

Antonio Saunders, Newport News, VA, pro se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Patrick F. Macrae, Esq., Ed J. Thompson, Esq.,
Asst. Attorneys General, Syracuse, NY, for Defendants.

### DECISION and ORDER

DAVID N. HURD, District Judge.

**\*1** Plaintiff, Antonio Saunders, brought this civil
rights action pursuant to 42 U.S.C. § 1983. By
Report-Recommendation dated August 14, 2006, the
Honorable George H. Lowe, United States Magistrate
Judge, recommended that defendants' motion for summary
judgment be granted. No objections to the
Report-Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of Magistrate Judge Lowe, the
Report-Recommendation is accepted and adopted in its
entirety. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is

GRANTED;

2. The complaint is DISMISSED; and

3. The Clerk is directed to enter judgment
accordingly.

IT IS SO ORDERED.

GEORGE H. LOWE, Magistrate Judge.

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and
Recommendation by the Honorable David N. Hurd,
United States District Judge, pursuant to 28 U.S.C. §
636(b) and Local Rule N.D.N.Y. 72.3(c). In this *pro se*
civil rights action brought under 42 U.S.C. § 1983,
Antonio Saunders ("Plaintiff") alleges that, while he was
incarcerated at Upstate Correctional Facility ("Upstate
C.F.") from July of 1999 to June of 2000, ten employees
of the New York State Department of Correctional
Services ("DOCS") violated various of Plaintiff's rights
under the Eighth and Fourteenth Amendments. (Dkt. No.
6 [Plf.'s Am. Compl.].) More specifically, Plaintiff alleges
that DOCS Commissioner Glenn Goord, Upstate C.F.
Superintendent Thomas Ricks, Upstate C.F. Captain S.
Racette, Upstate C.F. Lt. D. Uhler, Upstate C.F. Sgt.
Sinical, Upstate C.F. Officer D. Cook, Upstate C.F.
Officer Woods, Upstate C.F. Nurse D. Buffham, Upstate
C.F. Nurse M. Rushford, and an unidentified "John Doe"
Correctional Officer ("Defendants") violated Plaintiff's
rights in the following ways: (1) by recklessly failing to
protect Plaintiff from his cellmate, Inmate Ronald Lynch;
(2) by being deliberately indifferent to Plaintiff's serious
injuries sustained during an attack by Inmate Lynch in
May of 2000; (3) by intentionally or recklessly injuring
Plaintiff's fingers through closing a cell-door's "feed up
hatch" on them in May of 2000; and (4) by depriving him
of a fair and impartial hearing officer in a disciplinary
hearing in May of 2000 on a false misbehavior report.
*(Id.)*

Currently before the Court is Defendants' motion for
summary judgment. (Dkt. No. 49.) Generally, Defendants'

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

motion raises the following four issues: (1) whether Plaintiff has failed to establish (or even state) an Eighth Amendment claim against Defendants Goord, Ricks and Racette for recklessly failing to protect him from Inmate Lynch; (2) whether Plaintiff has failed to establish (or even state) an Eighth Amendment claim against Defendants Sinical, Woods, Buffham and Rushford for being deliberately indifferent to his serious medical needs; (3) whether Plaintiff has failed to establish (or even state) an Eighth Amendment claim against Defendant Cook for injuring Plaintiff's fingers in the feed up hatch; and (4) whether Plaintiff has failed to establish (or even state) a Fourteenth Amendment claim against Defendant Uhler for being biased during Plaintiff's disciplinary hearing. (Dkt. No. 49, Part 3 [Defs.' Mem. of Law].) For the reasons discussed below, I answer each of the foregoing questions in the affirmative. As a result, I recommend that Defendants' motion for summary judgment be granted.

## I. SUMMARY JUDGMENT STANDARD

*2 Under Fed.R.Civ.P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material [FN1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[FN2]

> FN1. A fact is "material" only if it would have some effect on the outcome of the suit. _Anderson v. Liberty Lobby,_ 477 U.S. 242, 248 (1986).

> FN2. _Schwapp v. Town of Avon,_ 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; _Thompson v. Gjivoje,_ 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).[FN3] The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." [FN4] "A dispute

regarding a material fact is _genuine_ if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [FN5]

> FN3. _See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,_ 475 U.S. 574, 585-87 (1986).

> FN4. _Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,_ 475 U.S. 574, 585-86 (1986); _see also Anderson v. Liberty Lobby, Inc.,_ 477 U.S. 242, 247-48 (1986).

> FN5. _Ross v. McGinnis,_ 00 Civ. 0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Imposed over this general burden-shifting framework is the generous perspective with which the Court generally views a _pro se_ civil rights plaintiff's papers.[FN6] For example, where a civil rights plaintiff is proceeding _pro se,_ and the defendant has filed a dispositive motion, generally the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest.[FN7]

> FN6. _See Haines v. Kerner,_ 404 U.S. 519, 520-21 (1972) _(per curiam) (pro se_ civil rights action); _Ortiz v. Cornetta,_ 867 F .2d 146, 148 (2d Cir.1989) _(pro se_ civil rights action); _Aziz Zarif Shabazz v. Pico,_ 994 F.Supp. 460, 467 (S.D.N.Y.1998) _(pro se_ civil rights action), _aff'd in part, vacated in part on other grounds,_ 205 F.3d 1324 (2d Cir.2000) (unpublished decision).

> FN7. _See Weixel v. Bd. of Ed. of City of New York,_ 287 F.3d 138, 146 (2d Cir.2002) (motion to dismiss in civil rights case); _Burgos v. Hopkins,_ 14 F.3d 787, 790 (2d Cir.1994) (motion for summary judgment in civil rights case); _Thomas v. Irving,_ 981 F.Supp. 794, 799 (W.D.N.Y.1997) (motion for summary judgment in civil rights case).

Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

survive a motion for summary judgment." [FN8] Moreover, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded such special solicitude." [FN9] I note that, in such cases, the overly litigious inmate is not being denied this special solicitude or status as a form of punishment for his litigiousness but as a form of recognition of his obvious litigation experience (and the lack of need for special solicitude). [FN10]

> FN8. *Bussa v. Aitalia Line Aeree Italiane S.p.A.,* 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted]; accord, *Durran v. Selsky,* 251 F.Supp.2d 1208, 1211 (W.D.N.Y.2003) [citations omitted]. For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, ... [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual." *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

> FN9. *See, e.g., Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *3 & n. 2 (N.D.N.Y. June 22, 2006) (McAvoy, J; Lowe, M.J.) (plaintiff had filed at least 20 actions in Northern District of New York and five other actions in Southern District of New York); *Davidson v. Talbot,* 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *19 & n. 10 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in the Northern District of New York alone); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 & n. 3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in Northern District alone of New York); *see also Johnson v. Eggersdorf,* 8 Fed. Appx. 140, 143 (2d Cir. May 17, 2001) (unpublished opinion) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *adopting,* 97-CV-0938, Report-Recommendation, at 1, n. 1 (N.D.N.Y. Apr. 28, 1999) (Smith, M.J.);

*Johnson v. C. Gummerson,* 201 F.3d 431 (2d Cir.1999) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. June 11, 1999) (McAvoy, J.), *adopting,* 97-CV-1727, Report-Recommendation (N.D.N.Y. April 28, 1999) (Smith, M.J.); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (plaintiff at one time had at least 34 simultaneously pending lawsuits); *Davidson v. Dean,* 204 F.R.D. 251, 257 (S.D.N.Y.2001) (plaintiff at one point had 30 simultaneous pending suits); *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000) (plaintiff had 10 suits pending in district); *McGann v. U.S.,* 98-CV-2192, 1999 WL 173596, at *2, 8-10 (S.D.N.Y. March 29, 1999) (court found 79 reported decisions of cases that plaintiff had filed during previous 43 years); *Brown v. McClellan,* 93-CV0901, 1996 U.S. Dist. LEXIS 8164, at *3-4, & n. 3, 1996 WL 328209 (W.D.N.Y.1996) (plaintiff had filed seven previous lawsuits against prison officials); *Brown v. Selsky,* 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n. 1, 1995 WL 13263 (W.D.N.Y. Jan. 10, 1995) (plaintiff had seven cases pending in district).

> FN10. *See, supra,* note 9 (citing cases discussing rationale for denying special status to overly litigious *pro se* litigants).

Here, after carefully considering the matter, I conclude that Plaintiff's litigation experience warrants denying him the special solicitude or status normally afforded *pro se* civil rights litigants. In addition to the current action, Plaintiff previously filed at least six federal district court actions, and two federal appeals, in this Circuit within an eight-year period. [FN11] Furthermore, two of these actions were successful inasmuch that Plaintiff recovered $25,000 in exchange for his agreement to voluntarily dismiss the actions. [FN12] Moreover, with regard to the current action, I note that the motion papers that Plaintiff has submitted over the past several years have often been fairly good-being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc. [FN13] As a result, some of Plaintiff's motions have been

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

granted.FN14 Also militating in favor of a finding that Plaintiff is not in need of the special status normally afforded to *pro se* litigants is the fact that he has apparently benefitted from the legal assistance of a "jailhouse lawyer," as he puts it.FN15

FN11. Specifically, he has filed the following six actions: (1) *Saunders v. Suarez,* 94-CV-3845, a prisoner civil rights action filed on 8/17/94 in the Eastern District of New York; (2) *Saunders v. Noble,* 96-CV-9347, a prisoner civil rights action filed on 11/10/98 in the Southern District of New York; (3) *Saunders v. Goord,* 98-CV-8501, a prisoner civil rights action filed on 12/2/98 in the Southern District of New York; (4) *Saunders v. Artuz,* 99-CV-0354, a habeas corpus proceeding filed on 1/19/99 in the Southern District of New York; (5) *Saunders v. City of New York,* 01-CV-6045, a prisoner civil rights action filed on 9/5/01 in the Eastern District of New York; and (6) *Saunders v. Dunkin,* 02-CV-0292, a *habeas corpus* proceeding filed on 1/11/02 in the Eastern District of New York. Moreover, he filed the following two appeals: (1) *Saunders v. Dunkin* on 4/12/02 (which appeal was dismissed on 6/24/02); and (2) *Saunders v. City of New York* on 10/26/01 (which appeal was dismissed on 1/16/02). While I do not rely on this fact in reaching my conclusion that Plaintiff should be denial the special status normally afforded to *pro se* litigants, I cannot help but note that, in his response to one of Defendants' interrogatories in this action, Plaintiff apparently misrepresented the number of other lawsuits he had previously filed, failing to identify four of those lawsuits. (Dkt. No. 49, Part 6, at Ex. B-5 [Plf.'s response to Defs.' Interrogatory No. 9, in which Plf. swore that the only other lawsuits that he had filed before July 16, 2004, were *Saunders v. Suarez,* 94-CV-3845, and *Saunders v. Goord,* 98-CV-8501].)

FN12. Specifically, in *Saunders v. Suarez* (E.D.N.Y.) and *Saunders v. Noble* (S.D.N.Y.) Plaintiff received $25,000 pursuant to settlement agreements. *See Saunders v. Suarez,* No.

94-CV-3845 (E.D.N.Y. Feb. 2.1999) (Stipulation and Order of Dismissal Pursuant to Settlement); *Saunders v. Noble,* No. 96-CV-9347 (S.D.N.Y. Jan. 28, 1999) (Stipulation and Order of Dismissal Pursuant to Settlement); Dkt. No. 49, Part 6, at Ex. B-5 [Plf.'s response to Defs.' Interrogatory No. 9, in which Plf. states, "I filed one 1983 civil suit in 1994 in the Eastern District of New York which was settled."].)

FN13. *(See, e.g.,* Dkt. Nos. 26, 30, 56.)

FN14. *(See, e.g.,* Dkt. No. 34.)

FN15. (Dkt. No. 50 [Order of 4/4/05 rejecting Plf.'s motion to compel, in which Plf. asserts that he was being assisted by a "Jail House Lawyer Todd Chaney"].) *See* John C. Rothermich, "Ethical and Procedural Implications of "Ghostwriting" for *Pro Se* Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L.Rev.* 2687, 2697 (Apr.1999) (arguing that, when the papers of a *pro se* litigant are "ghostwritten" by a legal assistant, the "special leniency" normally afforded to *pro se* litigants is "unwarranted") [citations omitted].

**\*3** Finally, I note that Plaintiff appears to have two "strikes" against him for purposes of 28 U.S.C. § 1915(g)'s "three strikes" rule.FN16

FN16. 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment under this section [enabling the prisoner to proceed *in forma pauperis]* if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."); *see Saunders v. Dunkin,* 02-CV-0292 (E.D.N.Y.) (Order dated 3/19/02 granting Defs.' motion to dismiss Plf.'s *habeas corpus* petition for failure to state a claim based on

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

untimeliness); *Saunders v. City of New York,* 01-CV-6045 (E.D.N.Y.) (Order dated 10/17/01 granting Defs.' motion to dismiss Plf.'s civil rights complaint for failure to state a claim based on qualified immunity).

## II. STATEMENT OF MATERIAL FACTS

The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record [FN17] and are not specifically controverted by the non-movant. [FN18] A district court has no duty to perform an independent review of the record to find proof of a factual dispute. [FN19] In the event the district court chooses to conduct such an independent review of the record, it may review any verified complaint (which, of course, is treated as an affidavit) for proof of a factual dispute. [FN20] Here, I note that Plaintiff's Second Amended Complaint is not verified. (Dkt. No. 8.)

FN17. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243-245 (2d Cir.2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.... [I]n determining whether the moving party has met this burden ..., the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g ., Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

FN18. *See* Local Rule 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."*).

FN19. *See Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

FN20. *See Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir.2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson,* 251 F.3d 345, 361 (2d Cir.2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied,* 536 U.S. 922 (2002); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed.R.Civ.P. 56(c) ("The judgment sought shall be rendered forthwith if the ... affidavits ... show that there is no genuine issue as to any material fact....").

Furthermore, to be sufficient to create a factual issue, an affidavit must, among other things, be based "on personal knowledge ." [FN21] An affidavit is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay. [FN22] In addition, such an affidavit must not be conclusory. [FN23] An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general. [FN24] Moreover,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

"[a]n affidavit must not present legal arguments." [FN25]

> **FN21.** Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc ., 44 F.3d 1082, 1084 (2d Cir.1995)* [citations omitted], *cert. denied sub nom, Ferrante v. U.S., 516 U.S. 806 (1995).*

> **FN22.** See *Patterson, 375 F.3d at 219* ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'... [Furthermore, the Rule's requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir.1988)* ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief.... Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc., 425 F.2d 92, 97 (2d Cir.1970)* (rejecting affidavit made on "suspicion ... rumor and hearsay"); *Spence v. Maryland Cas. Co., 803 F.Supp. 649, 664 (W.D.N.Y.1992)* (rejecting affidavit made on "secondhand information and hearsay"), *aff'd, 995 F.2d 1147 (2d Cir.1993).*

> **FN23.** See Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson, 375 F.3d at 219 (2d. Cir.2004)* ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.")

[citations omitted]; *Applegate, 425 F.2d at 97* (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

> **FN24.** See, e.g., *Bickerstaff v. Vassar Oil, 196 F.3d 435, 452 (2d Cir.1998)* (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur., 78 F.3d 61, 63 (2d Cir.1996)* (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir.1985)* (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e] ), *cert. denied, 474 U.S. 829 (1985); Applegate, 425 F.2d at 97* ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

> **FN25.** N.D.N.Y. L.R. 7.1(a)(2).

Finally, even where an affidavit is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." [FN26]

> **FN26.** See, e.g., *Jeffreys v. City of New York, 426 F.3d 549, 554-555 (2d Cir.2005)* (affirming

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner,* 03-CV-3789, 2006 WL 357824, at *3-4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issu *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd,* 136 Fed. Appx. 383 (2d Cir.2005) (unreported decision).

### III. ANALYSIS

**A. Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim Against Defendants Goord, Ricks and Racette for Recklessly Failing to Protect Him from Inmate Lynch**

The Eighth Amendment imposes on prison officials "a duty ... to protect prisoners from violence at the hands of other prisoners." [FN27] Accordingly, "[a] prisoner injured while in custody may recover for violations of his Eighth Amendment rights if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the

official's deliberate indifference to that risk." [FN28] "A showing of deliberate indifference requires (1) demonstrating that the conditions of incarceration pose a substantial risk of serious harm, and (2) establishing that the "prison officials possessed sufficient culpable intent." [FN29] Culpable intent exists where a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." [FN30]

> FN27. *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (citing *Farmer v. Brennan,* 511 U.S. 825, 833 [1994] ).

> FN28. *Fischl,* 128 F.3d at 55 (citing *Farmer,* 511 U.S. at 834 and *Weyant v. Oost,* 101 F.3d 845, 856 [2d Cir.1996] ).

> FN29. *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer,* 511 U.S. at 834).

> FN30. *Hayes,* 84 F.3d at 620 (citing *Farmer,* 511 U.S. at 834); *see also Rivera v. Senkowski,* 62 F.3d 80, 84-85 (2d Cir.1995) (deliberate indifference requires an objective component that the alleged deprivation is sufficiently serious, and a subjective component that the charged official, at a minimum, knew of and disregarded an excessive risk to inmate health or safety).

Here, I realize that "[n]ot ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." [FN31] However, in the interest of keeping this Report-Recommendation brief, I will assume for the sake of argument that Plaintiff has adduced sufficient evidence to create an issue of fact as to whether or not he was incarcerated under conditions posing a substantial risk of serious harm. [FN32] Specifically, I note that the record evidence indicates that, following the alleged attack by Inmate Lynch on or about May 16, 2000, Plaintiff was suffering from a fracture on the "tip" of his nose, a bruise below both eyes, a dime-sized abrasion on his nose, a golf-ball sized swelling on the left side of his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

head, a two-inch bite-mark on his left bicep, a four-and-one-half-inch abrasion on his back, and pain in his head.[FN33]

FN31. *Farmer,* 511 U.S. at 834.

FN32. *See, e.g., King v. Department of Corr., 95-CV-3057, 1998 WL 67669, at \*5 (S.D.N.Y. Feb. 18, 1998)* (inmate who, during attack by fellow inmate, received 12-13 stitches for cuts to the face, neck, and shoulder fulfilled objective requirement of Eighth Amendment test); *Knowles v. New York City Dep't of Corr., 904 F.Supp. 217, 221 (S.D.N.Y.1995)* (inmate who, during attack by fellow inmate using a sharp object, sustained a cut to the face requiring sixty stitches, met the objective requirement of Eighth Amendment test).

FN33. (*Compare* Dkt. No. 49, Part 4, ¶¶ 15, 18, 26 [Defs.'Rule 7.1 Statement, asserting facts and citing record evidence supporting those facts] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 18, 26 [not specifically denying relevant fact asserted in Paragraph 15, admitting facts asserted in Paragraph 18, and denying facts asserted in Paragraph 26 but citing no record evidence in support of that denial].)

**\*4** The issue, then, is whether Plaintiff has adduced sufficient evidence to create a question of fact as to whether Defendants had the culpable intent necessary to sustain a claim of failure to protect. Again, in order to prevail in demonstrating a culpable state of mind, a plaintiff must show both: (1) the defendant had actual knowledge of a substantial risk of harm to the plaintiff; and (2) the defendant disregarded that risk by failing to take reasonable measures to abate the harm.[FN34] "One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.' "[FN35] Courts routinely deny deliberate indifference claims based upon surprise attacks.[FN36]

FN34. *Farmer,* 511 U.S. at 837.

FN35. *Coronado v. Goord,* 99-CV-1674, 2000 WL 1372834, at \*4 (S.D .N.Y. Sept. 25, 2000) (quoting *Farmer,* 511 U.S. at 842-43).

FN36. *See, e.g., Zimmerman v. Macomber,* 95-CV-0882, 2001 U.S. Dist. LEXIS 12499, at \*12-19 (S.D.N.Y. Aug. 21, 2001) (granting summary judgment for defendants based on unexpected attack on inmate); *Coronado,* 2000 WL 1372834, at \*4 (dismissing complaint where officers unaware of earlier attacks on inmate at prior prison); *Grant v. Burroughs,* 96-CV-2753, 2000 WL 1277592, at \*3 (S.D.N.Y. Sept. 8, 2000) (granting summary judgment for defendants based on unexpected attack on inmate after earlier argument); *King v. Dept. of Corr.,* 95-CV3057, 1998 WL 67669, at \*5-6 (S.D.N.Y. Feb. 18, 1998) (failure to protect from isolated attack, after threat from prison official, did not sustain § 1983 claim).

Here, I find no evidence that either (1) any Defendant had actual knowledge of a substantial risk of harm to Plaintiff or (2) that any Defendant disregarded that risk by failing to take reasonable measures to abate the harm. The sole basis of any knowledge of a risk of harm in this case consists of three letters from Plaintiff to Defendants Goord, Ricks or Racette, and a memorandum from a correctional sergeant to Defendant Racette-all dated between six weeks and nine months before the alleged assault by Inmate Lynch on or about May 16, 2000.[FN37]

FN37. (Dkt. No. 49, Part 6, C-5 [Plf.'s letter of 8/8/99 to Def. Goord complaining of being placed in cell with Inmate Hodges, who was physically ill, and indicating that he had previously communicated this complaint to C.O. Jones], C-14 [Plf.'s letter of 8/16/99 to Def. Ricks complaining of being placed in cell with Inmate Hodges, who allegedly had been told by someone that Plf. was a snitch], C-9 [Plf.'s letter of 9/19/99 to Def. Ricks complaining of being placed in cell with Inmate Speight, who allegedly

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

had been told by someone that Plf. was a snitch], C-12 [Plf.'s letter of 3/26/00, erroneously dated 11/26/00, to Def. Racette complaining about his cell's proximity to the cells of Inmates Roddick and Corss, whom Plf. claimed were his enemies], C-10 [memorandum of 3/29/00 from Sgt. Barker to Def. Racette stating that Plf. had complained on 3/24/00 about being exposed to members of the "Bloods" gang, but that Sgt. Barker had investigated the complaint and found its basis to be "sketchy at best"].)

Defendants analyze these communications in some detail, concluding that none of them put Defendants Goord, Ricks and/or Racette on notice of an attack against Plaintiff by Inmate Lynch.[FN38] Plaintiff, on the other hand, argues that the letters, when construed liberally and considered together, show that Plaintiff had an extensive "enemy list" (due to Plaintiff's gang affiliation) and that Plaintiff needed to be placed in Protective Custody and/or in a single cell until a transfer to another facility could be arranged.[FN39]

FN38. (See, e.g., Dkt. No. 49, Part 3, at 8-9 [Defs.' Mem. of Law]; Dkt. No. 49, Part 4, ¶¶ 2, 3, 6, 10, 11, 12 [Defs.' Rule 7 .1 Statement].)

FN39. (Dkt. No. 56, Plf.'s Mem. of Law, at 4-6.)

First, there is no evidence of any prior problem between Plaintiff and *Inmate Lynch* of which any Defendant was or should have been aware. For example, setting aside the considerable length of time between Plaintiff's prior letters and the incident in question, none of the communications in question mention Inmate Lynch. Moreover, Plaintiff has not cited any evidence (nor even alleged or argued) that Defendants Goord, Ricks or Racette should have known, before May 16, 2000, that Inmate Lynch bore, or would bear, Plaintiff any animosity (e.g., that Inmate Lynch was a member of "the Bloods" gang, that Inmate Lynch believed Plaintiff to be a "snitch," or that Inmate Lynch had previously attacked fellow cell mates).

Second, even if Plaintiff's letters to these Defendants could have, when construed liberally and considered together, constituted reason to believe that Plaintiff might be attacked by a future cell mate, these Defendants can reasonably be held to be "on notice" only of letters that were addressed to them or read by them. Here, each of Plaintiff's letters was addressed to only one Defendant (and not the other two Defendants); and no evidence exists that more than one of the three Defendant read any of the letters (if any of the three Defendants read those letters). While Plaintiff may believe that those three Defendants were negligent in the performance of their duties, such negligence is not actionable under 42 U.S.C.1983.[FN40] Even a conclusion of negligence would be extremely difficult to reach under the circumstances, in which, prior to May 16, 2000, each time Plaintiff complained about his cell assignment, he was promptly moved.

FN40. *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

**\*5** As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendants Goord, Ricks or Racette for failing to protect him from Inmate Lynch.

**B. Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim against Defendants Sinical, Woods, Buffham and Rushford for Deliberate Indifference to Plaintiff's Serious Medical Needs**

Defendants recite the correct legal standard that governs Plaintiff's claim of inadequate medical care under the Eighth Amendment. Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a sufficiently serious medical need; and (2) that Defendant was deliberately indifferent to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998).

**1. Serious Medical Need**

As discussed earlier in Part III.A. of this Report-Recommendation, following the alleged attack on Plaintiff by Inmate Lynch on or about May 16, 2000, Plaintiff was suffering from a fracture on the "tip" of his nose, a bruise below both eyes, a dime-sized abrasion on his nose, a golf-ball sized swelling on the left side of his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

head, a two-inch bite-mark on his left bicep, a fourand-one-half-inch abrasion on his back, and pain in his head. FN41 Conspicuously absent from Plaintiff's medical records are any notations of medical staff, during the time in question, reporting complaints by Plaintiff of the sort of "severe" (or "extreme," "agonizing," "excruciating," etc.) pain FN42 that would be necessary to elevate Plaintiff's medical condition to one of constitutional dimensions. FN43 However, in the interest of keeping this Report-Recommendation brief, I will assume for the sake of argument that Plaintiff has adduced sufficient evidence to create an issue of fact as to whether or not he was suffering from a medical need that was sufficiently serious for purposes of the Eighth Amendment.

> FN41. *(Compare* Dkt. No. 49, Part 4, ¶¶ 15, 18, 26 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 18, 26].)

> FN42. (Dkt. No. 49, Part 6, at Ex. D [Plf.'s medical records].)

> FN43. *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (standard contemplates "a condition of urgency, one that may produce death, degeneration or extreme pain") [citation omitted].

**2. Deliberate Indifference**

The problem with Plaintiff's Eighth Amendment claim is that he has adduced no evidence that Defendants Sinical, Woods, Buffham and Rushford acted with the sort of *criminal recklessness* necessary to impose on them liability under 42 U.S.C. § 1983. FN44 Indeed, the available evidence indicates that the medical staff at Upstate C .F. promptly and continuously examined Plaintiff and treated his injuries.

> FN44. *See Farmer v. Brennan,* 511 U.S. 825, 827 (1994) ( "[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a claim of deliberate indifference to a

serious medical need under the Eighth Amendment is] equivalent to criminal recklessness...."); *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness....").

For example, the uncontroverted evidence indicates that, after the alleged attack on May 16, 2000, an examination of Plaintiff (or an attempted examination of Plaintiff) occurred at the following times: (1) approximately 6:30 a.m. on May 17, 2000, by Defendant Buffham; (2) approximately 1:00 p.m. on May 17, 2000, by Defendant Buffham; (3) 4:00 p.m. on May 17, 2000, by Defendant Rushford; (4) 6:15 a.m. on May 18, 2000, by another nurse; (5) 11:45 a.m. on May 18, 2000, by Defendant Rushford and another nurse; (6) approximately 6:30 a.m. on May 19, 2000, by Defendant Buffham; and (7) 6:21 a.m. on May 20, 2000, by another nurse. FN45 Furthermore, the uncontroverted evidence indicates that, after the alleged attack on May 16, 2000, Plaintiff's treatment included the following: (1) four packets of pain medication and a cold compress at approximately 6:30 a.m. on May 17, 2000, by Defendant Buffham; (2) a tetanus shot at 11:45 a.m. on May 18, 2000, by Defendant Rushford; (3) four packets of pain medication and multiple packets of bacitracin (a topical antibiotic ointment) at approximately 6:30 a.m. on May 19, 2000, by Defendant Buffham; and (4) an x-ray examination of his nose at some point between May 20, 2000, and June 5, 2000. FN46 These persistent efforts by the medical staff at Upstate C.F. to examine and treat Plaintiff are particularly impressive when one considers Plaintiff's numerous refusals to accept such examinations and treatment. FN47

> FN45. (Dkt. No. 49, Part 6, at Ex. D [Plf.'s medical records]; *compare* Dkt. No. 49, Part 4, ¶¶ 15, 17-21, 26 [Defs.' Rule 7 .1 Statement, asserting facts and citing record in support of those facts] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 17-21, 26 [admitting various of the asserted facts, or failing to specifically deny various of the asserted facts, or specifically denying various of the asserted facts but failing to cite record in support of such denials].)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

FN46. *(Id.)*

FN47. *(Id.* [indicating Plf.'s refusal to accept Tylenol at approximately 6:30 a.m. on May 17, 2000, his refusal to be examined at approximately 1:00 p.m. on May 18, 2000, and his refusal to have his nose x-rayed at 11:45 a.m. on May 18, 2000].)

**\*6** At most, there is evidence of a difference of opinion between Plaintiff and Defendants Buffham or Rushford, or *conceivably* a hint of negligence on the part of Defendants Buffham or Rushford. However, neither a difference of opinion nor negligence would be enough to make any medical staff member of Upstate C.F. liable to Plaintiff under the Eighth Amendment.[FN48] (This is especially true of Defendants Sinical or Woods, who have not been shown to be personally involved in the alleged Eighth Amendment deprivation.) [FN49] As the Second Circuit has explained,

FN48. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

FN49. Even if the medical staff at Upstate C.F. did not adequately treat Plaintiff, there is no evidence that either Defendant Sinical (a correctional sergeant) or Defendant Woods (a correctional officer) had anything to do with such inadequate treatment.

It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[ ] understandably seeks.... We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution.... The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves.... The essential test is one of medical necessity and not one simply of desirability.

*Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) [internal quotations and citations omitted].

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendants Sinical, Woods, Buffham and Rushford for deliberate indifference to a serious medical need.

**C. Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim Against Defendant Cook for Injuring Plaintiff's Fingers**

Defendants argue that (1) Plaintiff has failed to establish the objective element of an Eighth Amendment excessive force claim because he has failed to establish that the incident in which his hand was (allegedly) caught in the "feed up hatch" caused him anything more than *de minimis* pain or injury, and (2) in any event, Plaintiff has failed to establish the subjective element of an Eighth Amendment excessive force claim because he has failed to establish that Defendant Cook acted maliciously and sadistically in (allegedly) closing the feed up hatch on Plaintiff's hands. (Dkt. No. 49, Part 3, at 17-18.) Plaintiff responds that (1) his pain and injuries were more than *de minimis* in that the injuries caused his hand to bleed and required the application of antibiotic ointment, and (2) Defendant Cook's malice and sadism are evidenced by the fact that he laughed after "slamming" the feed up hatch on Plaintiff's hand. (Dkt. No. 56, Mem. of Law, at 11-12.)

**\*7** Several problems exist with Plaintiff's argument.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

Plaintiff's argument regarding the nature of his hand pain and injuries is not supported by the available record. Indeed, the current record highlights the minimal nature of any pain or injury to Plaintiff's hand. Specifically, Plaintiff's medical records show that, approximately five and a half hours after the alleged incident with the feed up hatch at 6:15 a.m. on May 18, 2000, Plaintiff's hand was examined by Defendant Rushford and another nurse for his complaints of finger injury. After that examination, Defendant Rushford and the other nurse noted the following findings: (1) Plaintiff was moving all of his digits with purpose, and his hand exhibited a good range of motion; (2) his "capillary refill" was "brisk," and his fingers were "pink & warm"; (3) there was no swelling or bleeding; (4) he had, on his left index and middle fingers, "pinhead sized" areas, which appeared to be old due to the fact that there were scabs present; and (5) he was not complaining of pain or discomfort.[FN50] As the Sixth Circuit found with regard to similar injuries sustained by an inmate after his hand was caught in a "feed up" hatch, I find that such injuries are, as a matter of law, *de minimis* for purposes of an Eighth Amendment excessive force claim. *See Owens v. Johnson,* No. 99-2094, 2000 U.S.App. LEXIS 15541, at *6 (6th Cir. June 23, 2000) (affirming district court's grant of summary judgment to defendants on inmate's Eighth Amendment claim because corrections officer's use of force in closing of "feed up tray" caused *de minimis* injury to inmate's hand).[FN51]

FN50. (Dkt. No. 49, Part 6, at Ex. D-4, D-7 [Plf.'s medical records]; *compare* Dkt. No. 49, Part 4, ¶ 20 [Defs.' Rule 7.1 Statement, asserting facts at issue] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶ 20 [not specifically controverting facts at issue].)

FN51. *See also Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992) ("That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.... The Eighth Amendment's prohibition of 'cruel and unusual punishment' necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of such force is not of a sort 'repugnant to the conscience of mankind.' "); *see, e.g., Outlaw v.. Newkirk,* 259

F.3d 833, 839 (7th Cir.2001) (finding no Eighth Amendment violation where use of force caused superficial injury to prisoner's hand).

Of course, that does not end the Eighth Amendment inquiry, since the ultimate issue is whether a particular use of force was wanton and unnecessary-i.e., excessive. Therefore, the Court should also consider "the need for application of force, the relationship between that need and the amount of force used, [any] threat reasonably perceived by [Defendant], and any effort made to temper the severity of a forceful response." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992) [internal quotation marks and citation omitted]; *see also Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993).

Here, the uncontroverted record evidence establishes the following facts: (1) at approximately 6:15 a.m. on May 18, 2000, Plaintiff's medical visit was terminated because he had become "belligerent and boisterous" and had "grabb [ed] at the feedup tray"; (2) after Defendant Cook had closed the feed up hatch and walked away, Plaintiff complained that his medication (apparently some aspirin) was stuck in the feed up hatch; (3) Defendant Cook returned and opened the feed up hatch so that Plaintiff could retrieve his medication; (4) as Plaintiff was retrieving his medication, he stated to Defendant Cook words to the effect of "I'm gonna fuck you up, you fucking cracker," whereupon Defendant Cook closed the feed up hatch; and (5) during the final closing of the feed up hatch, Plaintiff's hand was struck by the feed up hatch.[FN52]

FN52. (*See* Dkt. No. 49, Part 6, Exs. D-3, C-28, C-29, C-30, C-32; *compare* Dkt. No. 49, Part 4, ¶ 19 [Defs.' Rule 7.1 Statement, containing record citations supporting the facts asserted] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶ 19 [not providing any record citations in support of any denials of the facts asserted by Defendants]; *see also* Dkt. No. 8, ¶ 21 [Plf.'s Second Am. Compl., in which he acknowledged cursing at Def. Cook, calling him a "stupid fuck"]; Dkt. No. 56, Plf.'s Affid. in Opp., ¶ 30 [swearing that "as plaintiff reached for the medication left there by the nurse, Defendant Cook slammed the feed-up slot closed on his hand and then laughed," but

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

not denying uttering abusive or menacing words to Def. Cook *before* Def. Cook closed the feed-up slot, and basing his inference that Def. Cook *intended* to catch Plaintiff's hand in the feed-up slot solely on the alleged fact that Def. Cook laughed afterward].)

**\*8** It is undisputed that the feed up hatch eventually needed to be closed. Plaintiff argues, rather, that (1) Defendant Cook intentionally closed the feed up hatch on Plaintiff's hand, and (2) indeed, Defendant Cook "slammed" the feed up hatch, that is, he closed the feed up hatch with unnecessary force. Conspicuously missing from Plaintiff's argument is any citation to a corroborating affidavit from one of the "prisoners who [were] double-bunked on the same gallery," [FN53] or an inculpatory interrogatory response or request-for-admission response from Defendant Cook (or Defendant Rushford, who was allegedly present at the time).[FN54] Plaintiff's sole "evidence" that Defendant Cook intended to catch Plaintiff's hand in the feed up hatch is Plaintiff's brief sworn assertion that Defendant Cook "laughed" after the incident.[FN55] While such laughter, if true, would certainly be unkind, it would not, under the circumstances, be unconstitutional.

FN53. (Dkt. No. 8, ¶ 16 [Plf.'s Second Am. Compl., referring to such other prisoners].)

FN54. (Dkt. No. 8, ¶ 21 [Plf.'s Second Am. Compl., alleging that Defendant Rushford was present at the time in question].)

FN55. (Dkt. No. 56, Plf.'s Affid. In Opp., ¶ 30 [swearing that "as plaintiff reached for the medication left there by the nurse, Defendant Cook slammed the feed-up slot closed on his hand and then laughed"].) I note that, because Plaintiff's Second Amended Complaint is not verified, it does not have the effect of an affidavit. (See Dkt. No. 8.)

This is because Defendant Cook's response to Plaintiff's (alleged) injury is only one of the factors to be considered under the above-described *Hudson* Eighth Amendment analysis. Among the other factors to be

considered are the amount of force used and the need for that force (e.g., to prevent any threat reasonably perceived by Defendant). As discussed earlier, Plaintiff's medical records (which show only a minimal injury, if any, to Plaintiff's hand) indicate that the force used to close the feed up hatch had also been minimal. [FN56] Furthermore, the fact that Plaintiff was uttering menacing words at Defendant Cook at the time of the injury suggests that Defendant Cook closed the feed up hatch not with the intention of injuring Plaintiff's hand but the intention of blocking an aperture between himself and a convicted felon who was, at the time, harassing him (and arguably threatening him).[FN57]

FN56. *See Owens,* 2000 U.S.App. LEXIS 15541, at \*6 ("While not dispositive of the issue, de minimis injuries suggest de minimis use of force by defendants.").

FN57. I recognize that Plaintiff was ultimately not convicted of "threatening" Defendant Cook pursuant to Disciplinary Rule 102.10 (only "harassing" Defendant Cook pursuant to Disciplinary Rule 107 .11). *(See* Dkt. No. 49, Part 6, Exs. C-28, C-29, C-30, C-31.) However, such an acquittal, which could have been for any number of reasons, does not mean that Defendant Cook did not, at the time in question, *reasonably* perceive Plaintiff's utterances to constitute a threat, for purposes of the above-described *Hudson* Eighth Amendment analysis.

Balancing the amount of force used and the need for force under the circumstances, as established by the available record, I find that no reasonable juror could find that Defendant Cook had violated Plaintiff's Eighth Amendment rights. I note that this Court reached a similar conclusion approximately a decade ago under analogous circumstances, involving a correction officer's accidentally closing of a "feed up" hatch on an inmate's hand at a time when the inmate was not complying with the correction officer's directives. *See Boyd v. Selmer,* 842 F.Supp. 52, 56-57 (N.D.N.Y.1994) (McAvoy, J.).

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendant

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

Cook for injuring Plaintiff's fingers.

**D. Whether Plaintiff Has Failed to Establish (or Even State) a Fourteenth Amendment Claim Against Defendant Uhler for Being Biased During Plaintiff's Disciplinary Hearing**

Defendants argue that this claim should be dismissed for two reasons: (1) Plaintiff failed to exhaust his administrative remedies with respect to this claim in that he did not appeal Defendant Uhler's disciplinary hearing decision; and (2) Plaintiff has adduced no evidence that Defendant Uhler was so impartial as to present "a hazard of arbitrary decisionmaking." (Dkt. No. 49, Part 3, at 18-22 [Defs.' Mem. of Law].) However, Plaintiff responds to only the second argument. (Dkt. No. 56, Plf.'s Mem. of Law, at 13-14.)

**1. Failure to Exhaust Administrative Remedies**

**\*9** By failing to respond to Defendants' first argument (regarding Plaintiff's failure to exhaust his administrative remedies), Plaintiff may be deemed to have *consented* to that argument under Local Rule of Practice 7.1(b)(3).[FN58] Thus, Plaintiff's claim against those Defendants may be dismissed on that ground alone.[FN59] Of course, a pre-requisite for basing a decision to dismiss on this ground is a finding that Defendants have met their modest threshold burden [FN60] to demonstrate entitlement to the relief requested in their motion for summary judgment.[FN61] Here, I make such a finding.

FN58. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *cf.* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response ...* must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so *respond,* summary judgment, if

appropriate, shall be entered against the adverse party.") [emphasis added].

FN59. *See, e.g., Beers v. GMC,* 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at \*27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ).

FN60. *See Ciaprazi v. Goord,* 02-CV0915, 2005 WL 3531464, at \*8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324 (1986) ].

FN61. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed *and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein,* the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.") [emphasis added].

Specifically, I find that Defendants have adduced evidence, which is not controverted by Plaintiff, establishing the following facts: (1) Plaintiff was issued three misbehavior reports during the time in question-one by Defendant Cook, one by Sgt. Zerniak, and one by Defendant Buffham; (2) Lt. DuBray served as the hearing officer with respect to the misbehavior report issued by Defendant Cook, and Defendant Uhler served as the hearing officer with respect to the misbehavior reports issued by Sgt. Zerniak and Defendant Buffham; (3) in this action, Plaintiff challenges only the disciplinary hearing conducted by Defendant Uhler with respect to the misbehavior report issued by Defendant Buffham (since

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

the disciplinary hearing conducted by Defendant Uhler with respect to the misbehavior report issued by Sgt. Zerniak did not result in a finding of guilt); and (4) while Plaintiff appealed the finding of guilt reached by Lt. DuBray (with respect to the misbehavior report issued by Defendant Cook), Plaintiff never appealed the finding of guilt reached by Defendant Uhler with respect to the misbehavior report issued by Defendant Buffham.[FN62]

> FN62. *(Compare* Dkt. No. 49, Part 4, ¶¶ 15, 16, 19, 22-25, 27 [Defs.' Rule 7.1 Statement, containing record citations supporting the facts asserted] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 16, 19, 22-25, 27 [admitting and/or not specifically denying the relevant facts asserted by Defendants, and in any event providing no record citations for any denials of those facts].)

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [FN63] The Department of Correctional Services ("DOCS") has available a well-established three-step grievance program:

> FN63. 42 U.S.C. § 1997e.

First, an inmate is to file a complaint with the Grievance Clerk. An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue. If there is no resolution, then the full IGRC conducts a hearing and documents the decision. Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented. Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.[FN64]

> FN64. *White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002) (citing N.Y.

Comp.Codes R. & Regs. Tit. 7, § 701.7).

DOCS also has a separate and distinct administrative appeal process for inmate misbehavior hearings:

1. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

*10 2. For Tier II disciplinary hearings, the appeal is to the facility Superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

3. For Tier I violation hearings, the appeal is to the facility Superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

Individual decisions or dispositions regarding inmate misbehavior reports and hearings, or inmate grievances, are not considered grievable matters; however, the policies, rules and procedures of the disciplinary and grievance programs may be the subject of a grievance.[FN65] Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[FN66]

> FN65. *See* 7 N.Y.C.R.R. § 701.3(e)(1), (2); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

> FN66. *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

However, the Second Circuit recently held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[FN67] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." [FN68] Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." [FN69] Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." [FN70]

> FN67. *See* *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

> FN68. *Hemphill,* 380 F.3d at 686 (citation omitted).

> FN69. *Id.* [citations omitted].

> FN70. *Id.* [citations and internal quotations omitted].

Here, I can find no evidence in the record (or even an allegation or argument by Plaintiff) that (1) the administrative remedies not pursued by Plaintiff were in fact "not available" to Plaintiff, (2) any of the Defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or any of the Defendants took actions that inhibited Plaintiff's exhaustion of remedies such as to estop those Defendants from raising Plaintiff's failure to exhaust as a defense, or (3) "special circumstances" exist justifying Plaintiff's failure to comply with the administrative procedural requirements.

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment claim against Defendant Uhler due to Plaintiff's failure to exhaust his available administrative remedies. Because sufficient grounds exist upon which to base a dismissal of this claim, it is not necessary to address Defendants' alternative argument that Plaintiff has adduced no evidence that Defendant Uhler was so impartial as to present "a hazard of arbitrary decisionmaking." However, in the interest of thoroughness, I will briefly do so.

**2. Failure to Adduce Evidence of Partiality**

**\*11** Defendants recite the correct legal standard governing claims of bias against prison disciplinary hearing officers. (*See* Dkt. No. 49, Part 3, at 21-22 [Defs.' Mem. of Law].) Applying this standard, Defendants argue that Plaintiff's claim of improper bias against Defendant Uhler is based solely on the fact that Defendant Uhler found against Plaintiff on two of the five charges contained in Defendant Buffham's misbehavior report. (Dkt. No. 49, Part 3, at 22 [Defs.' Mem. of Law].) Plaintiff responds that his claim of improper bias is not only based on the fact that Defendant Uhler found against Plaintiff on two of the five charges; it is also based on the fact that Defendant Uhler's finding of guilt against Plaintiff on those two charges was completely unsupported by the evidence. (Dkt. No. 56, Plf.'s Mem. of Law, at 13-14.)

There are two problems with Plaintiff's argument. First, he has adduced no evidence that Defendant Uhler's finding of guilt was completely unsupported by the evidence. Indeed, the record completely contradicts Plaintiff's argument. [FN71] Second, even if Plaintiff had adduced such evidence, he has adduced no evidence that Defendant Uhler's finding of guilt was caused by some type of bias (e.g., a conflict of interest, prejudice, etc.) rather than being caused by simple error. His argument that the (allegedly) unsupported ruling itself constitutes evidence of bias is wholly circular and conclusory. Plaintiff does not even specifically allege that Defendant Uhler suppressed evidence, distorted testimony, or failed to inform Plaintiff of the charges or evidence. In any event, the record evidence would contradict such an allegation. [FN72]

> FN71. *(See, e.g.,* Dkt. No. 49, Part 6, at C-24 [stating the evidence upon which Def. Uhler relied when reaching his determination of guilt], C-26 [indicating that Def. Buffham testified at the hearing].)

> FN72. *(See, e.g.,* Dkt. No. 49, Part 6, at C-26 [indicating that Plf. did not request any witnesses, and that Def. Buffham testified at the hearing], C-23 [indicating that misbehavior report had been served on Plf.].)

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's Fourteenth Amendment claim

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)

(Cite as: 2006 WL 3051792 (N.D.N.Y.))

against Defendant Uhler due to Plaintiff's failure to adduce any evidence of improper bias by Defendant Uhler.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 49) be *GRANTED.*

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2006.

Saunders v. Ricks
Not Reported in F.Supp.2d, 2006 WL 3051792 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 934426 (N.D.N.Y.)

(Cite as: 2008 WL 934426 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
David ZAIRE, Plaintiff,
v.
Thomas WELCH, Correction Counselor at Clinton
Correctional Facility; R. Joyce Carver, Deputy
Commissioner/Designee for the NYS Department of
Correctional Services; Angelo Justiniano, Deputy
Commissioner/Designee for the NYS Department of
Correctional Services, Defendants.
No. 9:03-CV-629 (FJS/RFT).

March 31, 2008.
David Zaire, Dannemora, N.Y., pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Maria Moran, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

***ORDER***

FREDERICK J. SCULLIN, JR., Senior District Judge.

**\*1** Presently before the Court is Magistrate Judge
Randolph F. Treece's March 10, 2008
Report-Recommendation in which he recommends that
defendants' motion for an Order striking Plaintiff's IFP
status be denied and no objections to said
Report-Recommendation having been filed, the Court

**ORDERS** that the Report-Recommendation of
Magistrate Judge Randolph F. Treece filed March 10,
2008 is, for the reasons stated therein, **ACCEPTED** in its
entirety and the Court further

**ORDERS** that defendants' motion for an Order
striking Plaintiff's IFP status is **DENIED.**

**IT IS SO ORDERED.**

***REPORT-RECOMMENDATION and ORDER***

RANDOLPH F. TREECE, United States Magistrate
Judge.

*Pro se* Plaintiff David Zaire filed a civil rights action
pursuant to 42 U.S.C. § 1983 on May 22, 2003, in
conjunction with an Application to Proceed *In Forma
Pauperis* ("IFP"), claiming his First Amendment rights
were violated when Defendants retaliated against him for
initiating a previous federal civil rights action against the
Department of Correctional Services ("DOCS"). Dkt. Nos.
1 & 2. On May 29, 2002, this Court granted Plaintiff's IFP
Application. Dkt. No. 4. Almost a year later, after Plaintiff
failed to show cause why service had not been properly
effected, Plaintiff's Complaint was dismissed by the
Honorable Frederick J. Scullin, Senior United States
District Judge. Dkt. Nos. 6, 8, & 10. However this action
was subsequently re-opened after Plaintiff showed proof
of compliance with Judge Scullin's Order. Dkt. Nos.
11-12. Thereafter, because both this Court and the District
Court found issues of material fact with respect to
Plaintiff's retaliation claim, Defendants' Motion for
Summary Judgment on that claim was denied. Dkt. Nos.
24 & 30.[FN1]

> [FN1.] The Motion for Summary Judgment was
> granted as to Plaintiff's claim against Defendant
> Welch in his official capacity. Dkt. No. 30 at p.
> 7 n. 4 (adopting this Court's determination that
> such claim is barred by the Eleventh
> Amendment).

This Court subsequently granted Plaintiff's Motion to
Compel to release the names of the two "John Doe"
Defendants who allegedly retaliated against Plaintiff by
effecting two prison transfers in order to maintain Plaintiff
at a "hardship traveling distance" from his family. Dkt.
Nos. 26 & 31. Upon receiving that information, Plaintiff
sought leave, and was granted permission to file an
Amended Complaint adding Defendants Carver and
Justiniano to his claim, to which Answers were filed by the
Defendants. Dkt. Nos. 37 & 42.

Now before this Court is Defendants' Motion for an
Order striking Plaintiff's IFP status under 28 U.S.C. §

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 934426 (N.D.N.Y.)

(Cite as: 2008 WL 934426 (N.D.N.Y.))

1915(g), (Dkt. No. 43), which is opposed by Plaintiff, (Dkt. No. 44). For the reasons that follow, it is recommended that Defendants' Motion be **denied.**

## II. DISCUSSION

### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis.* 28 U .S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing civil suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines at any time that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2).

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (PLRA) of 1996, which renders several restrictions on a prisoner's ability to exploit the justice system. One such mechanism is the so-called "three-strike rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been dismissed as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.* at § 1915(g).

In recognizing the legitimate government interests fostered by the PLRA amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' "

environment which allows inmates indiscriminately to file suit at taxpayers' expense. *See Anderson v. Coughlin,* 700 F.2d 37, 42 (2d Cir.1983) (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973)).

*Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases count towards the three strikes rule, a court may look to dismissals which predated the enactment of the PLRA. *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000). The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the prisoner's case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Zaire's "Three Strikes"

In their Motion, Defendants cite to four cases they argue count as "strikes" under § 1915(g): 1.) *Zaire v. Stinson,* 95-CV-1173, Memorandum-Decision and Order (N.D.N.Y. Feb. 24, 1997) (Scullin, D.J.) (adopting Report-Recommendation of Scanlon, M.J.) (§ 1983 action dismissed for failure to state a claim); 2.) *Zaire v. Mitchell,* 1996 WL 82391 (S.D.N.Y. Feb. 27, 1996) (petition for writ of *habeas corpus* dismissed after finding the action constituted an "abuse of the writ"); 3.) *Zaire v. Henderson,* 1990 WL 91752 (S.D.N.Y. June 22, 1990) (petition for writ of *habeas corpus* dismissed and petitioner's arguments were deemed "frivolous"); and 4.) *Zaire v. Barringer,* 9:01-CV-1865, Decision and Order (N.D.N.Y. July 22, 2003) (Hurd, D.J.) (adopting Report-Recommendation of Sharpe, M.J.) (§ 1983 action dismissed for failure to state a claim).

With respect to *Zaire v. Stinson,* Plaintiff contends that because that case was still pending when the PLRA was enacted, it should not be counted as a strike. But, as noted above, the Second Circuit has held that actions brought before the PLRA went into effect can count as strikes. *Welch v. Galie,* 207 F.3d at 132. Plaintiff's argument that his action is distinguishable because it was *pending* and not dismissed prior to the enactment of the PLRA is unavailing. Plaintiff made this same argument in a previous lawsuit before the Honorable Lawrence E. Kahn, United States District Judge, who rejected Plaintiff's argument, stating that "given this Circuit's legal position

Not Reported in F.Supp.2d, 2008 WL 934426 (N.D.N.Y.)

(Cite as: 2008 WL 934426 (N.D.N.Y.))

that both pre-PLRA and post-PLRA actions may be counted as 'strikes,' it follows that actions pending during the enactment of [the] PLRA may also be counted as 'strikes.' " *Zaire v. Goord,* 2007 WL 160720, at *2 (N.D.N.Y. Jan. 16, 2007). We agree with Judge Kahn's analysis and find that *Zaire v. Stinson* constitutes a strike.

**\*3** The next two cases on Defendants' list, *Zaire v. Mitchell* and *Zaire v. Henderson,* involved petitions for writs of *habeas corpus,* not civil rights actions.[FN2] There is no clear precedent in this Circuit as to whether the dismissal of a petition for a writ of *habeas corpus* may count as a strike under the PLRA, however, in *Reyes v. Keane,* 90 F.3d 676, 678 (2d Cir.1996) (*overruled on other grounds* by *Lindh v. Murphy,* 521 U.S. 320 (1997)), the Second Circuit held that a petition for a writ of *habeas corpus* is not a civil action for purposes of the PLRA. Although that decision did not address the specific issue of whether a frivolous petition for a writ of *habeas corpus* can count as a strike under § 1915(g), the Second Circuit determined "that Congress did not intend the PLRA to apply to petitions for a writ of habeas corpus." *Reyes v. Keane,* 90 F.3d at 678. Furthermore, the court held that filing fee requirements for civil actions under the PLRA do not apply to *habeas* petitions. *Id.*

> FN2. We note that each of these *habeas* petitions was filed prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), which established limits and guidelines for prisoners filing *habeas* petitions. *See* 28 U.S.C. § 2254.

Considering the Second Circuit's analytical distinction of the filing of *habeas* petitions from the filing of civil actions, which are expressly regulated by the PLRA, it would be incongruous to hold that *habeas* petitions apply to the PLRA for purposes of the "three-strike rule" only. *See Jennings v. Natrona County Det.Ctr. Med. Facility,* 175 F.3d 775, 779 (10th Cir.1999) (stating that given the Tenth Circuit's previous determination that *habeas* petitions are not "civil actions" for purposes of the PLRA, there was no rational reason to treat the three strike provision of § 1915(g) differently from the rest of 28 U.S.C. § 1915); *see also Andrews v. King,* 398 F.3d 1113,

1122-23 (9th Cir.2005) ("[T]he language of § 1915(g) does not encompass habeas petitions[.]") (citations omitted).

However, this conclusion would not follow where a prisoner has brought what amounts to a civil rights claim cloaked as a *habeas* petition. *See, e.g., Green v. Suthers,* 208 F.3d 226 (10th Cir.2000) (unpublished opin.) (The court would "not allow [plaintiff] to defeat the purpose of the PLRA by proceeding in *habeas* with a quintessential conditions-of-confinement suit of the type the PLRA was specifically meant to discourage."); *see also Andrews v. King,* 398 F.3d at 1123 n. 12 (recognizing that "some *habeas* petitions may be little more than 42 U.S.C. § 1983 actions mislabeled as *habeas* petitions so as to avoid the penalties imposed by 28 U.S.C. § 1915(g)" and stating that in such cases the *habeas* petition may count as a "strike"). In *In re Nagy,* 89 F.3d 115, 116-17 (2d Cir.1996), the Second Circuit considered whether a petition for a writ of *mandamus* was subject to the PLRA filing fees. The court held that in such instances, application of the PLRA depends on the nature of the claim presented. *Id.* at 117. The critical question is whether a petition is being used as an "alternative device for obtaining the relief sought in civil actions that are covered by the PLRA." *Id.* at 117 n. 1. In such instances, the PLRA should apply. *Id.* at 117 ("Thus, if a prisoner, contemplating the filing of a complaint against prison officials under 42 U.S.C. § 1983, decided to avoid liability for filing fees and instead sought comparable relief by applying for a writ of mandamus ... the PLRA provisions should normally apply.")

**\*4** In the case before us, both of Plaintiff's previously dismissed *habeas* petitions cited to by Defendants concerned his underlying criminal conviction and not his conditions of confinement. These previous *habeas* petitions should therefore not be counted as strikes under the PLRA.

Finally, with respect to Defendants' reference to *Zaire v. Barringer,* that claim was dismissed on July 24, 2003, after the instant Complaint was filed on May 22, 2003. Dismissals that post-date the filing of the action in question may not count as "strikes" under § 1915(g). *Eady v. Lappin,* 2007 WL 1531879, at *3 (N.D.N.Y. May 22,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 934426 (N.D.N.Y.)

(Cite as: 2008 WL 934426 (N.D.N.Y.))

2007) (citing *Cruz v. Marcial,* 2002 WL 655520, at *1-2 (D.Conn. Apr. 18, 2002) (emphasizing that a plain reading of § 1915(g) reveals that all strikes must have occurred before the action in question is brought). Therefore, *Zaire v.Barringer* also does not count as a strike, at least for purposes of the current action.

Thus, Defendants have identified only one previous action that constitutes a strike under § 1915(g). We therefore recommend that their Motion for an Order striking Plaintiff's IFP status be **denied.**

We note that Plaintiff's IFP status was recently revoked in an action brought before Judge Kahn. *See Zaire v. Goord,* 2007 WL 160720 (N.D.N.Y. Jan 16, 2006). As noted above, Judge Kahn counted *Zaire v. Stinson,* 95-CV-1173, as a "strike." In addition, Judge Kahn counted *Zaire v. Barringer,* 9:01-CV-1865, and *Zaire v. Murray,* 9:01-CV-1866, as "strikes." *See Zaire v. Goord,* 9:05-CV-1247, Dkt. Nos. 12 & 19, Defs.' Mot. to Revoke Pl.'s IFP Status & Order Granting Defs.' Mot. to Revoke Pl.'s IFP status. Plaintiff has avoided such a revocation in this case because the instant action was filed before the cases Judge Kahn correctly identified as "strikes" were dismissed as frivolous or failing to state a claim, thereby preventing our counting them as "strikes" under the rule stated above. *See Eady v. Lappin,* 2007 WL 1531879, at *3

Specifically, *Zaire v. Barringer* was dismissed on July 24, 2003, and *Zaire v. Murray* on September 4, 2003. Thus, both of these dismissals post-dated Plaintiff's filing of the instant action on May 22, 2003. However, they pre-dated Plaintiff's commencement of the action before Judge Kahn on October 3, 2005, and therefore were properly counted as "strikes" in that case. Although Plaintiff's IFP status will not be revoked in this case, his IFP status in any action commenced after September 4, 2003, would be ripe for revocation.

### III. CONCLUSION

For the reasons stated herein, it is hereby
**RECOMMENDED,** that Defendants' Motion for an Order striking Plaintiff's IFP status (Dkt. No. 43) be **denied,** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

N.D.N.Y.,2008.

Zaire v. Welch
Not Reported in F.Supp.2d, 2008 WL 934426 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Edmon GASAWAY, a/k/a Edmond Gasaway, Plaintiff,
v.
Bernard WILLIAMS, Special Agent for Treasury
Inspector Gen. for Tax Admin.; and Randy Silvis,
Special Agent for Treasury Inspector Gen. for Tax
Admin., Defendants.
No. 8:11–CV–0549 (GTS/RFT).

Jan. 30, 2012.
Edmon Gasaway, Raybrook, NY, pro se.

### *MEMORANDUM–DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* prisoner action filed by Edmon Gasaway ("Plaintiff") against the two above-captioned federal agents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.,* are (1) United States Magistrate Judge Randolph F. Treece's Report–Recommendation of September 21, 2011, recommending that Plaintiff's Complaint be *sua sponte* dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a),(b) unless Plaintiff files an Amended Complaint that states an actionable claim, and (2) Plaintiff's Amended Complaint of August 15, 2011. (Dkt.Nos.6, 8.) For the reasons set forth below, Plaintiff's Amended Complaint is accepted for filing, Magistrate Judge Treece's Report–Recommendation is adopted with modification, and Plaintiff's Amended Complaint is *sua sponte* dismissed with prejudice for failure to state a claim and frivolousness pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a),(b). In addition, Plaintiff is directed to show cause, within thirty (30) days of this Decision and Order, why this Court should not issue an Order barring him from filing any future *pro se* actions in this Court without first obtaining leave of the Court.

### I. RELEVANT BACKGROUND

Because this Decision and Order is intended primarily for the review of the parties, the Court will not recite in detail Plaintiff's claims and factual allegations, or the procedural history of the action, except where necessary below in Part III of this Decision and Order.

### II. APPLICABLE LEGAL STANDARDS

#### A. Standard of Review Governing a Report–Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[FN1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[FN2]

> FN1. *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

FN2. See *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[FN3] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[FN4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [FN5]

FN3. *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).

FN4. *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

FN5. *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**\*2** After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

## B. Legal Authority Permitting Court to *Sua Sponte* Review Plaintiff's Complaint Under the Circumstances

Because Magistrate Judge Treece correctly recited the authorities that confer upon the Court the power, and the duty, to *sua sponte* review Plaintiffs' Complaint under the circumstances, the Court will not repeat them here. (See Dkt. No. 6, at 1–2.) The Court would add only that it also

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

possesses the inherent power to *sua sponte* dismiss *pro se* complaint based on frivolousness. *See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

**C. Legal Standard Governing Dismissal Based on Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because Plaintiffs' Complaint is dismissed based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and

"facilit[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*3** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

**\*4** This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[FN6] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN7] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[FN8]

FN6. *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N .Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN7. *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN8. It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[FN9] Moreover, in the Second Circuit, a *pro se* plaintiff's papers in

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint—to the extent those papers are consistent with the allegations in the complaint.[FN10]

> FN9. *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted); *L–7 Designs, Inc. v. Old Navy, LLC,* No. 10–573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.R.Civ.P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case).

> FN10. *See Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n. 1 (2d Cir.1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss.");

*Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) ( "In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v.Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where *a pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004) (Hurd, J.).

### III. ANALYSIS

**A. Review of Report–Recommendation**

In response to Magistrate Judge Treece's Report–Recommendation, Plaintiff did not file an Objection but an Amended Complaint. (Dkt. No. 8.)[FN11] The complete absence of any specific (or even general) challenge to Magistrate Judge Treece's Report–Recommendation is exemplified by the fact that the beginning of the Amended Complaint states that it was being submitted in "compli[ance]" with the Report–Recommendation. (*Id.* at 1.) As a result, the Report–Recommendation is subject to only clear-error review (pursuant to the legal standard set forth above in Part II.A. of this Decision and Order).

> FN11. Because a plaintiff has a right to amend his complaint "once as a matter of course" within 21 days after service of a responsive pleading or motion under Fed.R.Civ.P. 12(b), (e), or (f), and because no such responsible pleading or motion to dismiss had been filed before Plaintiff's filed his Amended Complaint, the Court accepts Plaintiff's Amended Complaint for filing and directs the Clerk of the Court to change the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

caption on the docket to reflect the change in Defendants. Fed.R.Civ.P. 15(a)(1).

Of course, to the extent that Plaintiff's Amended Complaint corrects the pleading deficiencies identified in the Report–Recommendation, the Report–Recommendation has been rendered moot. However, to the extent that Plaintiff's Amended Complaint does not correct the pleading deficiencies identified in the Report–Recommendation, the Report–Recommendation is still applicable.

The primary pleading deficiency identified in the Report–Recommendation was that, "[a]ssuming the agency identified ... is the correct agency and is subject to FOIA, then it is the proper Defendant in this action, and not the individually named Defendants." (Dkt. No. 6, at 3.) In response to the Report–Recommendation, Plaintiff merely dropped Benard Williams and Randy Silvis as Defendants and added the "Inspector General for Tax Administration" as the sole Defendant. (*Compare* Dkt. No. 1 *with* Dkt. No. 8.) "The Inspector General for Tax Administration" is a person (i.e., J. Russell George), not an agency. As a result, Plaintiff's Amended Complaint does not correct the pleading deficiency identified in the Report–Recommendation, and the Report–Recommendation is still applicable.

**\*5** After carefully reviewing all of the papers in this action, including the relevant portion of Magistrate Judge Treece's Report–Recommendation, the Court concludes that the relevant portion of the Report–Recommendation is thorough, well-reasoned and correct. Magistrate Judge Treece employed the proper legal standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court adopts the relevant portion of the Report–Recommendation for the reasons stated therein.

With regard to this adoption, the Court would add only two points. First, the relevant portion of Magistrate Judge Treece's Report–Recommendation would survive even a de novo review. Second, the Court finds that it would be inappropriate to permit Plaintiff to file a Third Amended Complaint before dismissal. An opportunity to amend is not required where, as here, the plaintiff has

already been afforded the opportunity to amend.[FN12] Furthermore, Plaintiff's failure to correct the defect is inexcusable given that (a) Magistrate Judge Treece specifically advised him of the defect, (b) the Court granted Plaintiff an extension of time to correct the defect, and (c) Plaintiff has extensive experience filing *pro se* civil pleadings in federal court. (*See, infra,* Part III.B. of this action.)

FN12. *Shuler v. Brown,* 07–CV–0937, 2009 WL 790973, at \*5 & n. 25 (N.D.N.Y. March 23, 2009) (McAvoy, J., adopting Report–Recommendation by Lowe, M.J.) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer,* 07–CV–1264, 2009 WL 632890, at \*5 & n. 20 (N.D.N.Y. March 9, 2009) (Hurd, J., adopting Report–Recommendation by Lowe, M.J.); *Abascal v. Hilton,* 04–CV–1401, 2008 WL 268366, at \*8 (N.D.N.Y. Jan.130 2008) (Kahn, J., adopting, on de novo review, Report–Recommendation by Lowe, M.J.); *see also Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

In the alternative, the Court dismisses Plaintiff's Amended Complaint for two independent reasons. First, based on Plaintiff's own factual allegations, it is clear that his FOIA request was deficient in the following seven regards: (1) it was not addressed to TIGTA's Disclosure Office;[FN13] (2) it was not clearly marked "Freedom of Information Act Request";[FN14] (3) it did not reasonably describe the records sought by the request;[FN15] (4) it did not state whether the requester wishes to inspect the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

records or desires to have a copy made and furnished without first inspecting them; FN16 (5) it did not include his agreement to pay fees for search, duplication, and review, if applicable, or include a request for a fee waiver or reduction of fees, along with a justification for such a request indicating which of the following user category is applicable (i.e., commercial, educational institution, scientific institution, news media, or other); FN17 (6) it was not *clearly* signed by the person making the request; FN18 and (7) it did not set forth the address where Plaintiff wanted to be notified about whether or not the request would be granted. FN19

> FN13. 31 C.F.R. §§ 1.1(a)(i)(L), 1.5(b)(3) & Appendix A to Subpart A of Part 1. The Court notes that, on February 25, 2010, in response for a request for information by Plaintiff, Bernard Williams, Special Agent in Charge, Office of the Treasury Inspector General for Tax Administration ("TIGTA"), advised Plaintiff in writing as follows, in pertinent part:

>> Some limited information about your complaint might ... be available to you under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The kind of information that might be available would be information about you or information you provided, such as a copy of any correspondence you might have sent us. Requests for information under the FOIA should be directed to the TIGTA's Disclosure Office.

> (Dkt. No. 8, at 9.) However, instead of sending a request for information under FOIA to TIGTA's Disclosure Office, on March 10, 2010, Plaintiff sent a letter to Benard Williams, "Attn: Complaint Management," requesting, in pertinent part, information regarding a complaint he had filed with TIGTA on August 11, 2008, bearing complaint number 54–0808–0019–C.

> FN14. 31 C.F.R. § 1.5(b)(3).

> FN15. 31 C.F.R. § 1.5(b)(4), (d).

> FN16. 31 C.F.R. § 1.5(b)(6).

> FN17. 31 C.F.R. §§ 1.5(b)(2),(7) 1.7(b),(e).

> FN18. 31 C.F.R. § 1.5(b)(1). Instead, Plaintiff's FOIA request was signed by Edmon Gasaway, as "Authorized Representative," suggesting that he was acting on someone else's behalf.

> FN19. 31 C.F.R. § 1.5(b)(5).

These deficiencies are material because, to state the FOIA claim in question, a plaintiff must allege facts plausibly suggesting that "an agency has (1) improperly (2) withheld (3) agency records." *United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). Simply stated, the Court cannot conclude that Plaintiff has alleged facts plausibly suggesting that agency records were *withheld* improperly when he has alleged facts plausibly suggesting that no proper *request* was made. *See* 5 U.S.C. § 552(a)(3)(A) ("[E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."); *Hull v. I.R.S., U.S. Dep't of Treasury,* 656 F.3d 1174, 1193, n. 10 (10th Cir.2011) ("While we agree that generally an agency has a duty to search for records responsive to a FOIA request prior to claiming they are exempt, another general FOIA principle dictates an agency only has a duty to search for responsive records upon receipt of a request that complies with the agency's rules and procedures for such requests. 5 U.S.C. § 552(a) (3)(A).").

**\*6** Second, even if Plaintiff had alleged facts plausibly suggesting that he had properly made his FOIA request, he has alleged facts plausibly suggesting that much, if not all, of the information he is seeking (if it exists) is exempt from disclosure under FOIA. Among the matters exempted from disclosure under FOIA are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency ...." 5 U.S.C. § 552(b)(5). It is difficult to imagine how Plaintiff could

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

have obtained the internal memoranda in question in an action against TIGTA. For example, if Plaintiff brought an action against the relevant TIGTA agents for failure to do their jobs pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 3 88 (1971),[FN20] his claims would presumably be dismissed on the ground that (1) an action pursuant to FOIA is the proper remedy,[FN21] and/or (2) negligence is not actionable under *Bivens.*[FN22] With regard to this last point, it is important to note the underlying complaint lodged by Plaintiff with TIGTA (regarding which Plaintiff requests information about or on his FOIA request) was patently frivolous, further eviscerating any *Bivens* claim (and accompanying means of discovery) that Plaintiff might have against TIGTA.[FN23]

> **FN20.** *See, e.g., Shipley v. I.R.S.,* 10–CV–0067, 2010 WL 2985446, at *3 (D.Mont. July 26, 2010)* ("Because Mr. Shipley is suing both federal agents and federal agencies [based on their tax-collection efforts], the Court has construed his claims as being brought pursuant to the Federal Tort Claims Act and *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).").

> **FN21.** *Cf. Judicial Watch, Inc. v. Rossotti,* 217 F.Supp.2d 618, 625 (D.Md.2002)* ("When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.... Circuit courts have applied this reasoning to deny *Bivens* claims in lawsuits against I.R.S. employees where the plaintiffs would have another avenue of relief through the provisions of the Internal Revenue Code.") [internal quotation marks and citations omitted]; *see, e.g., W. Ctr. for Journalism v. I.R.S.,* 116 F.Supp.2d 1, 4–13 (D.D.C.2000)* (construing tax-exempt corporation's claim of inadequate response by I.R.S. to corporation's FOIA requests as arising under FOIA, not *Bivens* ).

> **FN22.** *See Riggio v. Bank of Am. Nat'l Trust &*

*Savings Ass'n,* 31 F. App'x 505, 506 (9th Cir.2002)* ("[N]egligence is not actionable under *Bivens* ...."); *Lafity v. Mitchell,* 10–CV–2572, 2011 WL 6431145, at *3 (D.S.C. Nov.30, 2011)* ("Negligence, in general, is not actionable under ... *Bivens.*" ); *Brewer v. Outlaw,* 11–CV–0119, 2011 WL 4434062, at *2 (E.D.Ark. Aug.30, 2011)* ("Negligence, however is not actionable in a *Bivens* case."); *Foster v. City of Asheville,* 09–CV–0442, 2011 WL 1234097, at *4 (W.D.N.C. March 30, 2011)* ("Negligence is not actionable under *Bivens* ...."); *Grainger v. Fed. Bureau of Prisons,* 08–CV–0387, 2009 WL 47127, at *5 (S.D.Tex. Jan.6, 2009)* ("At most, plaintiff's allegations against the records officer amount to negligence, which is not actionable under *Bivens.*" ).

> **FN23.** *Cf. U.S. v. Kaun,* 827 F.2d 1144, 1153 (7th Cir.1987)* ( "Frivolous FOIA requests are similarly not constitutionally protected."), *accord, Peck v. Merletti,* 64 F.Supp.2d 599, 603 (E.D.Va.1999); *Hulshof v. Jurkas,* 05–CV–0152, 2006 WL 2943302, at *6, n. 2 (W.D.Mich. Oct.13, 2006)* (noting that the Michigan legislature had a "legitimate interest in conserving scarce governmental resources squandered responding to frivolous FOIA requests").

With regard to this issue of frivolousness, some elaboration is appropriate. From Plaintiff's Amended Complaint, it is clear that his underlying complaint to TIGTA concerned the following events. On March 3, 1997, following a conviction for armed robbery, Plaintiff was sentenced to, *inter alia,* pay $2,009.18 in restitution to two victims, as well as a special assessment of $250 to the court.[FN24] On June 6, 2008, Plaintiff apparently submitted a purported "Promissory Note" and "Bill of Exchange" to the clerk's office in the amount of two billion dollars ($2,000,000,000), in an attempt to satisfy his sentence.[FN25] (According to Plaintiff, the funds resulted from a debt owed by the United States of America and the State of California to Plaintiff for their unauthorized use of his name, which is a "legal fiction," and which he owns exclusively as a "sovereign.")[FN26] The clerk of the court

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

never responded.[FN27] On August 11, 2008, Plaintiff filed a complaint with TIGTA alleging that the Department of Justice's Criminal Investigation Division had failed to investigate the fact that the Eastern District of Texas' Clerk's Office had negotiated the note but failed to credit his account (and release him from prison). (Dkt. No. 8, at 13–16.) Simply stated, this entire case is an exercise in frivolity and a waste of strained judicial resources.[FN28]

> FN24. *U.S. v. Gasaway,* 96–CR–0054, Docket Entry (E.D. Tex. filed March 3, 1997); *U.S. v. Gasaway,* 96–CR–0054, Letter from Probation Office to Judge (E.D. Tex. filed May 14, 1997); *U.S. v. Gasaway,* 96–CR–0054, Submission by Defendant Gasaway (E.D. Tex. filed Sept. 19, 2010).

> FN25. *U.S. v. Gasaway,* 96–CR–0054, Submission by Defendant Gasaway, at 1 (E.D. Tex. filed Feb. 8, 2008) (stating that he had originally submitted the attached "Promissory Note" and "Bill of Exchange" on June 6, 2008); *U.S. v. Gasaway,* 96–CR–0054, Submission by Defendant Gasaway, at 4–6 (E.D. Tex. filed July 21, 2008) (attaching documents entitled "Bonded Promissory Note" and "Non–Negotiable Bill of Exchange" in amount of $2,000,000 and dated June 6, 2008).

> FN26. (*See generally* Dkt. No. 8.)

> FN27. *See, generally, U.S. v. Gasaway,* 96–CR–0054, Docket Sheet (E.D.Tex.).

> FN28. Of course, on October 15, 2010, the Fifth Circuit denied Gasaway's appeal, explaining that, *inter alia,* Gasaway's "promissory note" and "bill of exchange" was insufficient to satisfy his sentence. *In re Gasaway,* No. 10–40747, Order, at 2(5th Cir. filed Oct. 10, 2010).

**B. Appropriateness of Bar Order**

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, with increasing frequency over the past 10 years, Plaintiff has filed 17 *pro se* prisoner civil actions (other than this one) in six different federal district courts.[FN29] Eight of these 17 actions have been dismissed based on pleading deficiencies or failure to comply with court directives.[FN30] In addition, he has filed six appeals in civil actions, also with increasing frequency.[FN31] Five of those appeals have been dismissed based on lack of merit or failure to comply with court directives.[FN32] At the core of most, if not all, of Plaintiff's actions and appeals is his theory that (1) both the United States of America and the State of California have incurred a debt to Plaintiff for their unauthorized use of his name, which is a "legal fiction," and which he owns exclusively as a "sovereign," (2) the documents he prepares memorializing that debt (complete with citations to the Uniform Commercial Code) are valid negotiable financial instruments, and (3) his submission of those instruments to a federal court clerk's office mandates his release from prison.

> FN29. *See Gasaway v. Warden, FCI Allenwood,* 11–CV–2386, Petition (M.D. Pa. filed Dec. 28, 2011) (*pro se* prisoner civil rights action); *Gasaway v. Warden, FCI Allenwood,* 11–CV–0756, Petition (M.D. Pa. filed Dec. 28, 2011) (*pro se* habeas corpus action); *Gasaway v. Perdue,* 11–CV–1272, Complaint (N.D.N.Y. filed Oct. 26, 2011) (*pro se* prisoner civil rights action); *Gasaway v. Nicklin,* 11–CV–0465, Judgment (N.D.N.Y. filed Dec. 7, 2011) (Suddaby, J.) (dismissing *pro se* prisoner action *sua sponte* as improperly pled as habeas corpus action rather than prisoner civil rights action); *Gasaway v. Bureau of Prisons,* 11–CV–1223, Complaint (N.D.N.Y. filed Sept. 9, 2011) (*pro se* prisoner civil action); *Gasaway v. Bureau of Prisons,* 11–CV–1625, Complaint (D. D.C. filed Sept. 9, 2011) (*pro se* prisoner civil action); *Gasaway v. Warden, FCI Allenwood,* 11–CV–1970, Petition (M.D. Pa. filed July 5, 2011) (*pro se* habeas corpus action); *Gasaway v. Bonded Promissory Note,* 11–CV–0229, Petition (E.D. Tex. filed Apr. 18, 2011) (*pro se* habeas corpus action); *Gasaway v. Bonded Promissory Note,* 11–CV–0436, Petition (N.D.N.Y. filed Apr. 18, 2011) (*pro se* habeas corpus action); *Gasaway v. Obama,* 10–CV–1979, Dismissal Order (D. D.C. filed Nov. 12, 2010) (Collyer, J.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

(dismissing *pro se* prisoner civil action *sua sponte* for failure to state claim); *Gasaway v. Martinez,* 10–CV–1121, Memorandum & Order (M.D. Pa. filed Nov. 8, 2010) (Nealon, J.) (dismissing *pro se* prisoner civil rights action *sua sponte* for failure to state claim); *Gasaway v. United States of America,* 10–CV–1563, Order (M.D. Pa. filed Sept. 14, 2010) (McClure, J.) (dismissing *pro se* prisoner civil action *sua sponte* for failure to pay filing fee or file motion to proceed in *forma pauperis); Gasaway v. Holder,* 10–CV–1615, Memorandum (M .D. Pa. filed Sept. 10, 2010) (McClure, J.) (dismissing *pro se* habeas corpus action *sua sponte* for failure of petition to show entitlement to relief); *Gasaway v. Holder,* 09–CV–1687, Order (M.D. Pa. filed Oct. 15, 2009) (McClure, J.) (dismissing *pro se* habeas corpus action *sua sponte* for failure of petition to show entitlement to relief); *Gasaway v. United States of America,* 09–CV–1711, Complaint (C.D. Cal. filed March 11, 2009) (*pro se* prisoner civil action); *Gasaway v. USA,* 07–CV–0592, Order (Fed. Ct. Cl. filed Dec. 21, 2007) (Allegra, J.) (dismissing *pro se* prisoner civil action for failure to prosecute); *Gasaway v. United States of America,* 02–CV–0403, Memorandum Opinion (E.D. Tex. June 25, 2002) (Heartfield, J.) (dismissing *pro se* prisoner action to vacate, set aside or correct a sentence *sua sponte* as barred by applicable statute of limitations).

FN30. *Gasaway v. Nicklin,* 11–CV–0465, Judgment (N.D.N.Y. filed Dec. 7, 2011) (Suddaby, J.) (dismissing *pro se* prisoner action *sua sponte* as improperly pled as habeas corpus action rather than prisoner civil rights action); *Gasaway v. Obama,* 10–CV–1979, Dismissal Order (D. D.C. filed Nov. 12, 2010) (Collyer, J.) (dismissing *pro se* prisoner civil action *sua sponte* for failure to state claim); *Gasaway v. Martinez,* 10–CV–1121, Memorandum and Order (M.D. Pa. filed Nov. 8, 2010) (Nealon, J.) (dismissing *pro se* prisoner civil rights action *sua sponte* for failure to state claim); *Gasaway v. United States of America,* 10–CV–1563, Order

(M.D. Pa. filed Sept. 14, 2010) (McClure, J.) (dismissing *pro se* prisoner civil action *sua sponte* for failure to pay filing fee or file motion to proceed in *forma pauperis* ); *Gasaway v. Holder,* 10–CV–1615, Memorandum (M.D. Pa. filed Sept. 10, 2010) (McClure, J.) (dismissing *pro se* habeas corpus action *sua sponte* for failure of petition to show entitlement to relief); *Gasaway v. Holder,* 09–CV–1687, Order (M.D. Pa. filed Oct. 15, 2009) (McClure, J.) (dismissing *pro se* habeas corpus action *sua sponte* for failure of petition to show entitlement to relief); *Gasaway v. USA,* 07–CV–0592, Order (Fed. Ct. Cl. filed Dec. 21, 2007) (Allegra, J.) (dismissing *pro se* prisoner civil action *sua sponte* for failure to prosecute); *Gasaway v. United States of America,* 02–CV–0403, Memorandum Opinion (E.D. Tex. June 25, 2002) (Heartfield, J.) (dismissing *pro se* prisoner action to vacate, set aside or correct a sentence *sua sponte* as barred by applicable statute of limitations).

FN31. *See In re Gasaway,* No. 11–41352, Motion (5th Cir. filed Dec. 12, 2011); *Gasaway v. Martinez,* No. 11–1711, Order (3d Cir. filed July 26, 2011) (denying motion for failing to pay filing fee); *In re Gasaway,* No. 11–40500, Order (5th Cir. filed June 7, 2011) (denying motion to file successive habeas corpus petition); *Gasaway v. Martinez,* No. 10–4519, Order (3d Cir. filed Jan. 6, 2011) (dismissing appeal for failing to pay filing fee); *USA v. Gasaway,* No. 03–41099, Order (5th Cir. filed Feb. 3, 2004) (dismissing appeal for lack of jurisdiction); *In re Gasaway,* No. 03–40344, Order (5th Cir. filed July 9, 2003) (dismissing appeal for failing to pay filing fee).

FN32. *See Gasaway v. Martinez,* No. 11–1711, Order (3d Cir. filed July 26, 2011) (denying motion for failing to pay filing fee); *In re Gasaway,* No. 11–40500, Order (5th Cir. filed June 7, 2011) (denying motion to file successive habeas corpus petition); *Gasaway v. Martinez,* No. 10–4519, Order (3d Cir. filed Jan. 6, 2011)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

(dismissing appeal for failing to pay filing fee); *USA v. Gasaway,* No. 03–41099, Order (5th Cir. filed Feb. 3, 2004) (dismissing appeal for lack of jurisdiction); *In re Gasaway,* No. 03–40344, Order (5th Cir. filed July 9, 2003) (dismissing appeal for failing to pay filing fee).

**\*7** Based on Plaintiff's litigation history, the Court finds that (1) Plaintiff lacks a good-faith expectation in prevailing in his lawsuits, (2) he has proven himself to be vexatious and indeed incorrigible when proceeding *pro se,* (3) he has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) he has demonstrated that no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at \*1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

Because of his history of filing unmerited and indeed vexatious lawsuits, Plaintiff is hereby warned that the Court will not tolerate the filing of frivolous actions by

him in the future. As a result, he is directed to show cause, within thirty (30) days, why this Court should not issue an Order barring him from filing any future *pro se* actions without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, he will be prohibited from filing, in this Court, any action *pro se* (that is, without counsel), without prior leave of the Court, pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

**ACCORDINGLY,** it is

**ORDERED** that the Clerk of the Court shall amend (1) the description of Dkt. No. 8 to reflect that the document filed is Plaintiff's Amended Complaint, and (2) the caption on the docket to reflect the resulting change in Defendants; and it is further

**ORDERED** that Magistrate Judge Treece's Report–Recommendation (Dkt. No. 6) is *ACCEPTED* and *ADOPTED* as modified by this Decision and Order; and it is further

**\*8 ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 8) is *sua sponte* **DISMISSED** in its entirety with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a),(b); and it is further

**ORDERED** that *Plaintiff is hereby directed to show cause, within thirty (30) days of this Decision and Order, why this Court should not issue an Order barring him from filing any future pro se actions in this Court without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, he will be prohibited from filing, in this Court, any action pro se (that is, without counsel) without prior leave of the Court, pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.*

The Clerk's Office is directed to close this action.

*The Court certifies, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from this Decision and Order would not be taken in good faith.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 264611 (N.D.N.Y.)

(Cite as: 2012 WL 264611 (N.D.N.Y.))

N.D.N.Y.,2012.

Gasaway v. Williams
Slip Copy, 2012 WL 264611 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)

(Cite as: 2008 WL 238553 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Elbert WELCH, Plaintiff,
v.
Donald SELSKY, et al., Defendants.
Civil Action No. 9:06-CV-00812 (LEK/DEP).

Jan. 28, 2008.

Elbert Welch, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Charles J. Quackenbush, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on December 14, 2007, by the Honorable David E. Peebles, United States Magistrate Judge, pursuant to 28 U.S .C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 49). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff, which were filed on December 21, 2007. Objections (Dkt. No. 50).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 49) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that the Order granting Plaintiff *in forma pauperis* status (Dkt. No. 6) is **VACATED;** and it is further

**ORDERED,** that Defendants' Motion seeking dismissal of Plaintiff's Complaint (Dkt. No. 41) is **GRANTED** as to all Defendants and all claims unless Plaintiff pays the full required filing fee of $350.00 within thirty days after entry of this Order; and it is further

**ORDERED,** that Plaintiff's Motion seeking the imposition of sanctions against Defendants pursuant to Rule 11 of the Federal Rules of Civil Procedure (Dkt. No. 46) is **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Elbert Welch, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights. In his complaint the plaintiff, an active litigator who is no stranger to this and other federal courts, having initiated a myriad of legal proceedings since the onset of his incarceration, asserts numerous claims related to his confinement at three different correctional facilities alleging, *inter alia,* that various prison officials have failed to protect him from known dangers, conspired to issue false misbehavior reports against him, and placed him in cells with individuals who posed a threat to his safety. Plaintiff additionally contends that several television broadcasting corporations have actively participated in or furthered the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)

(Cite as: 2008 WL 238553 (N.D.N.Y.))

unlawful actions of prison officials by regularly discussing his circumstances on television principally through news outlets, utilizing various newscasters and other television personalities. In his complaint, in addition to requesting injunctive relief, plaintiff seeks recovery of $10 million in compensatory and punitive damages against each state defendant, as well as $1 billion in compensatory and punitive damages against each corporate defendant individually, or $20 billion on a joint and several basis.

**\*2** Currently pending before the court is a motion by the defendants seeking revocation of plaintiff's *in forma pauperis* ("IFP") status and conditional dismissal of his complaint under [28 U.S.C. § 1915(g)](), absent his prepayment in full of the applicable filing fee. Defendants' motion is predicated upon the dismissal of three or more such inmate civil rights actions previously brought by the plaintiff, but found to be lacking in palpable merit. Plaintiff has opposed defendants' motion by invoking the imminent danger exception to [section 1915(g)](), contending that despite the dismissal of three or more civil rights cases previously brought by him, he should be permitted to proceed with this action because he faces imminent danger of serious physical injury based on the new facts and events recited in his complaint. Plaintiff also has cross-moved for the imposition of sanctions against defendants under [Rule 11 of the Federal Rules of Civil Procedure]() for what he perceives to be the filing of a frivolous motion to dismiss.

Because I agree that plaintiff is subject to the three strikes provision of [section 1915(g)](), and has not established a basis to invoke the limited, imminent danger exception to that rule, I recommend that defendants' motion be granted. Accordingly, I also recommend that plaintiff's motion for sanctions be denied as moot.

I. *BACKGROUND*

Plaintiff is a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"); at the various times relevant to his constitutional claims, plaintiff was confined within either the Auburn Correctional Facility ("Auburn") located in Auburn, New York, where he was confined when this action was commenced; the Clinton Correctional Facility ("Clinton") located in Dannemora, New York; or the

Gouverneur Correctional Facility ("Gouverneur") located in Gouverneur, New York. *See generally* Complaint (Dkt. No. 1). In his complaint, plaintiff alleges that while confined at Auburn he was subject to assorted acts of a conspiratorial nature, including prison officials forcing him to house in double-bunked cells in order to provoke him into engaging in conduct that would result in disciplinary action, as well as attempting to place him in disciplinary keeplock confinement. *Id.* at ¶¶ 1-3, 27. Plaintiff claims that while at Clinton, several defendants perpetuated this conspiracy by lodging false misbehavior reports against him. *Id.* at ¶ 5. At Gouverneur, this conspiracy continued in the nature of corrections officials again forcing plaintiff to double-bunk with inmates who attempted to injure him and to provoke him into engaging in physical altercations. *Id.* at ¶ 6. Plaintiff further maintains that he was forced to house with inmates who were inflicted with contagious diseases which threatened his own physical well-being. *Id.* at ¶ 12. According to plaintiff, the defendants have used these housing conditions to place him in imminent danger of serious physical injury, including danger of disease, food poisoning, and physical assault. *Id.* at ¶ 16. Plaintiff also accuses defendants Stone, Sorrell, and Taylor, among others at Gouverneur, of retaliating against him in furtherance of the conspiracy by withholding his personal property upon learning that he had obtained administrative modification of his six-month term of confinement in a prison special housing unit ("SHU"). *Id.* at ¶ 25. Plaintiff alleges that the Federal Bureau of Investigations ("FBI") has infiltrated this conspiracy, which has existed for many years. *Id.* at ¶ 16.

**\*3** In addition to these assertions, plaintiff contends that several television corporations, news broadcasters, television personalities, and professional athletes have participated in this conspiracy by discussing it on the air on a regular basis. *Id.* at ¶¶ 18-22, 28-32.

II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on June 29, 2006. Dkt. No. 1. Named as defendants in plaintiff's complaint are the State of New York; Eliot Spitzer, the former New York State Attorney General; Donald Selsky, the DOCS Director of Special Housing/Inmate Discipline; Glenn Goord, the former DOCS Commissioner; Dale Artus, the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)

(Cite as: 2008 WL 238553 (N.D.N.Y.))

superintendent at Clinton; Captain Brown, allegedly employed at Clinton; Corrections Officers T. Charland, R. Lincoln, T.M. Stone, and Sorrell; Hearing Officer Eggleston, Correctional Counselor Logan; individuals identified only as Lieutenants Quimette and Sawyer, and Captain Coryer; and Superintendents Justin Taylor, Graham, Bellnier, and Rourke (collectively, "the state defendants"). *Id.* Also named as defendants are seventy-some television corporations, newscasters, television personalities and professional athletes (collectively, "the broadcast defendants"). *Id.*

By order issued by Senior District Judge Lawrence E. Kahn on November 30, 2006, the broadcast defendants were dismissed from this civil rights action, *sua sponte,* based upon the plaintiff's failure to allege that they were acting under color of state law, and his presentment of only vague allegations of the existence of a conspiracy between the broadcast defendants and the state defendants. Dkt. No. 6 at 3-4. Judge Kahn also reasoned that Welch should not be permitted to proceed *in forma pauperis* against the broadcast defendants because his allegations against them were clearly baseless and factually frivolous. *Id.* at 4-5. In that order, Judge Kahn additionally dismissed the State of New York from the action on the ground that suits against the state are barred by the Eleventh Amendment to the United States Constitution. *Id.* at 5. Confronted with plaintiff's claim of imminent danger as articulated in his complaint, Judge Kahn preliminarily granted Welch's application to proceed *in forma pauperis;* he cautioned, however, that his IFP status could be revoked in the event of a later finding, after the filing of a response from the remaining state defendants, that plaintiff is not in imminent danger or not otherwise entitled to proceed *in forma pauperis. Id.* at 6.

On March 12, 2007, plaintiff sought to amend his complaint to add to his action the broadcast defendants previously dismissed by the court, also requesting inclusion of several new defendants and additional allegations in support of his claims against the broadcast defendants. Dkt. No. 38. That request was denied by me in an order dated June 4, 2007. Dkt. No. 44.

In lieu of filing an answer, the state defendants moved to revoke plaintiff's IFP status on May 3, 2007, pursuant to the three strikes provision of 28 U.S.C. § 1915(g), and

to dismiss his complaint conditionally. Dkt. No. 41. Plaintiff has opposed defendants' motion, and cross-moved for the imposition of sanctions on the ground that the motion is frivolous. Dkt. Nos. 43, 46. These motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U .S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[FN1] *See also* Fed.R.Civ.P. 72(b).

> **FN1.** Plaintiff's motion for sanctions would ordinarily fall within my non-consensual jurisdiction under 28 U.S.C. § 636(b). *See Robinson v. Eng,* 148 F.R.D. 635, 639 (D.Neb.1993) ("[A] magistrate judge has the authority to issue orders resolving Rule 11 issues.") (citing, *inter alia,* 28 U.S.C. § 636(b)(1)(A) (indicating that a magistrate judge can "hear and determine any pretrial matter pending before the court")). This authority is not without exception, however, in that a magistrate judge cannot issue sanctions which "fall within the eight so-called dispositive motions excepted by Section 636(b)(1)(A)." *DePalma v. Nike, Inc.,* No. 95CV1428, 1998 WL 690880, at *6 n. 4 (N.D.N.Y. Sept. 30, 1998) (Pooler, D.J.) (citing, *inter alia, Robinson* ). Because plaintiff's motion for sanctions is intertwined with, and hinges on, my determination regarding defendants' dispositive motion to dismiss this action, I have chosen to format my response to that motion as a recommendation to Judge Kahn.

III. *DISCUSSION*

A. *Three Strikes Provision Generally*

**\*4** In their motion defendants invoke 28 U.S.C. § 1915(g), arguing that under that section plaintiff's litigation history, which includes at least three merit-based dismissals, warrants revocation of his IFP status. Section 1915(g), which was enacted as part of sweeping inmate litigation reform brought about by adoption of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), though engendering far less litigation than some of its PLRA counterparts

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)

(Cite as: 2008 WL 238553 (N.D.N.Y.))

including, notably, the exhaustion of remedies requirement of 42 U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); see also Polanco v. Hopkins, 510 F.3d 152, 2007 WL 4258724, at *1 n. 1 (2d Cir. Dec. 6, 2007). The manifest intent of Congress enacting this "three strikes" provision was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates. Tafari v. Hues, 473 F.3d 440, 443-44 (2d Cir.2007); Gill v. Pidlypchak, No. 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J. & Treece, M.J.). The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has had three previous strikes to engage in a cost-benefit analysis in some ways similar to that which other civil litigants must make before deciding whether to commence suit, accompanied by the filing of the full fee-that is, to assess whether the result to be achieved justifies the filing fee expenditure in advance, rather than in installments. See Ibrahim v. District of Columbia, 463 F.3d 3, 6 (D.C.Cir.2006). As the Second Circuit has noted, in the context of PLRA amendments requiring inmates to authorize prison officials to make deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted in forma pauperis status,

> [p]rior to the enactment of the in forma pauperis amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' "

environment which allows inmates indiscriminately to file suit at taxpayers' expense.

Nicholas v. Tucker, 114 F.3d 17, 20 (2d Cir.1997), cert. denied sub nom., Nicholas v. Miller, 523 U.S. 1126, 118 S.Ct. 1812 (1998) (citations omitted); see also Gill, 2006 WL 3751340, at *2.

*5 The question of whether the dismissal of a prior action qualifies as a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such a question for the court.[FN2] Tafari, 473 F.3d at 442-43. In determining whether a dismissal satisfies the failure to state a claim prong of the statute, implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions. Tafari, 473 F.3d at 442 (citing Andrews v. King, 398 F.3d 1113, 1121 (9th Cir.2005)).

> FN2. The Second Circuit has expressed its view that the time for determination of "strikes" is only when the section 1915(g) issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that section. DeLeon v. Doe, 361 F.3d 93, 95 (2d Cir.2004); see also Snider v. Melindez, 199 F.3d 108, 115 (2d Cir.1999) ("We ... doubt whether the entry of a strike is properly considered at the time an action is dismissed.").

B. Application of Section 1915(g)

Defendants have offered the specifics of previously dismissed actions in support of their section 1915(g) motion, persuasively demonstrating the existence of at least three prior "strikes" in this instance, and the court thus need not linger in addressing the issue. Defendants' Memorandum (Dkt. No. 41-2) at 3. Indeed, Welch does not dispute that he has garnered at least three strikes prior to his filing the current action in this court. See Dkt. No. 43. On March 16, 2000-well before the filing of this suit-a decision of District Judge Thomas J. McAvoy, dismissing plaintiff's complaint in another action based on the fact

Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)

(Cite as: 2008 WL 238553 (N.D.N.Y.))

that he had accumulated three strikes because at least three of his prior federal suits had been dismissed as frivolous, was affirmed by the Second Circuit.[FN3] *Welch v. Galie,* 207 F.3d 130, 131-32 (2d Cir.2000) (affirming *Welch v. Galie,* No. 97-CV-1369, Dkt. Nos. 119, 131 (N.D.N.Y.) (TJM/DRH)); *see also Welch v. Fisher,* No. 07-CV-929, Dkt. No. 8 at 2-3 (N.D.N.Y.) (TJM/DEP) (acknowledging that plaintiff earned three strikes status seven years ago as determined in *Welch v. Galie,* 207 F.3d 130 (2d Cir.2000)). That finding is entitled to preclusive effect in this action, *see Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288-89 (2d Cir.2002), thus eliminating defendants' need to independently establish the existence of three strikes for purposes of this action.

> FN3. In that decision, the Second Circuit went so far as to determine that one of those dismissals, which occurred before the enactment of section 1915(g), nonetheless constituted a "strike" under the statute. *Galie,* 207 F.3d at 132.

Since defendants have established the filing by plaintiff of at least three meritless civil rights complaints while confined as a New York State prison inmate, absent applicability of the imminent danger exception set out in the relevant statute, plaintiff is subject to the provisions of 28 U.S.C. § 1915(g), and may properly be required to prepay in full the applicable filing fee in order to pursue his claims notwithstanding that IFP status was previously conferred. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247-48 (E.D.N.Y.1998).

## C. *Imminent Danger Exception*

As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule of section 1915(g). *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes provision on the basis of past harm. *Malik,* 293 F.3d at 562-63. An inmate who claims the benefit of this exception must also show that the

danger faced rises to the level of a "serious physical injury." 28 U.S.C. § 1915(g). The imminent danger an inmate faces, moreover, must be real, and not merely speculative or hypothetical. *Johnson v. Barney,* No. 04 Civ. 10204, 2005 WL 2173950, at *1-2 (S.D.N.Y. Sept. 6, 2005) (finding that inmate's allegation of danger at facility he was not housed at, but may pass through at infrequent occasions in the future, did not establish imminent danger).

*6 The term "serious physical injury," as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death [.]" *Ibrahim,* 463 F.3d at 7. In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney,* 281 F.3d 709, 710 (8th Cir.2002). Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin,* 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim,* 463 F.3d at 6-7; and heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini,* 352 F.3d 328, 330-31 (7th Cir.2003) (finding upon reaching the merits, however, that plaintiff's complaint did not state an Eighth Amendment claim).

Plaintiff's claims in this action stem chiefly from his belief that he is the subject of an elaborate conspiracy by DOCS officials, in conjunction with the FBI, to fabricate his mental illness, to falsify misbehavior reports against him, to poison his food, to keep him in disciplinary confinement, and to injure and/or kill him. Welch further insists that he confronts imminent danger of serious physical injury because he has been diagnosed with Hepatitis C, which derived from the conspirators' contamination of his food and insistence that he share cells with diseased individuals, and had been denied treatment for this condition while at Clinton, only recently receiving care for the disease since his relocation to Coxsackie Correctional Facility.

Plaintiff filed his complaint while he was housed at Auburn Correctional Facility, although it addresses

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)

(Cite as: 2008 WL 238553 (N.D.N.Y.))

circumstances which occurred during the course of his confinement at Auburn, Clinton and Gouverneur. Since the imminent danger exception only applies to danger existing at the time the complaint was filed, *Malik* 293 F .3d at 563, to the extent that Welch's allegations concern events that occurred at the Clinton and Gouverneur facilities, prior to his confinement at Auburn and the filing of his complaint, these claims do not provide any grounds for me to find that plaintiff faces imminent danger of serious physical injury. *See also Abdul-Akbar v. McKelvie,* 239 F.3d 307, 315 (3d Cir.2001) ("By using the term 'imminent', Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."); *McFadden,* 16 F.Supp.2d at 247 (specifying that imminent danger must occur at the time the plaintiff seeks to file the suit, and not at the time of the alleged incidents). Likewise, in his opposition to defendants' motion to dismiss, plaintiff has attempted to interject a previously unasserted claim that he confronts imminent danger of serious physical injury based on the failure of prison officials to treat his Hepatitis C condition while he was confined at Clinton. Plaintiff, however, did not propound this claim in his complaint now before the court. Based on the pleadings before me, it is apparent that this allegation also does not relate to circumstances in existence at the time he filed this lawsuit, and therefore does not provide a basis for me to find that plaintiff is under imminent danger of serious physical injury.[FN4]

> **FN4.** While plaintiff's complaint alleges in wholly conclusory terms that defendants' conspiracy against him is both systemic and ongoing, it is arguable that he can no longer satisfy the imminent danger exception requirement in light of his transfer, after commencement of the action, to the Orleans Correctional Facility, where he is currently housed. *Cf. Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006) (indicating that the transfer of an inmate plaintiff complaining of civil rights violations out of the prison facility in which those violations are alleged to have occurred moots any claim for injunctive relief against prison officials of the transferring facility).

*7 Moreover, the question of whether claims strikingly similar to those now advanced by plaintiff Welch, regarding the alleged conspiracy against him, meet the imminent danger exception under section 1915(g) was previously addressed in *Welch v. Samuels,* No. 02-CV-1077 (N.D.N.Y.2002) (TJM/GLS) (Defendants' Motion (Dkt. No. 41) Exh. 1) and *Welch v. Fisher,* 07-CV-929 (N.D.N.Y.2007) (TJM/DEP), two of the many other civil rights actions brought by him in the Northern District of New York. In his decision in *Welch v. Samuels,* District Judge McAvoy noted that the claim being raised, to the effect that the plaintiff was the target of a conspiracy by DOCS employees to kill him, was not new but instead was similar to claims raised in previously-filed actions and dismissed as "patently frivolous", and did not establish the existence of imminent danger.[FN5] *See Samuels,* No. 02-CV-1077, Dkt. No. 9 at 3. Five years later, in his recent decision in *Welch v. Fisher,* Judge McAvoy determined that plaintiff's allegations of "a long-standing conspiracy" consisting of efforts by DOCS officials to confine him to cells, to contaminate his food, and to poison him were factually unsupported and did not demonstrate that he was under imminent danger of serious physical injury.[FN6] *Fisher,* No. 07-CV-929, Dkt. No. 8 at 4-5.

> **FN5.** Judge McAvoy reiterated this determination in his denial of plaintiff's subsequent motion for reconsideration, *Samuels,* No. 02-CV-1077, Dkt. No. 12, which was affirmed by the Second Circuit on appeal, *id.* at Dkt. Nos. 15, 19.

> **FN6.** Welch has appealed this ruling to the Second Circuit, and awaits a determination from that court. *Fisher,* No. 07-CV-929, Dkt. No. 13.

Finding nothing in plaintiff's complaint in this action to distinguish the present circumstances from the aforementioned cases previously decided by District Judge McAvoy, I likewise conclude, and therefore recommend a finding to the effect, that plaintiff has failed to demonstrate the existence of imminent danger of serious physical injury of the extent contemplated by Congress when enacting section 1915(g).

D. *Motion for Sanctions*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)

(Cite as: 2008 WL 238553 (N.D.N.Y.))

In response to defendants' motion to dismiss, plaintiff has cross-moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure on the ground that the motion is frivolous, specifically seeking an order striking defendants' motion papers.[FN7,FN8] See Dkt. Nos. 43, 46.

> FN7. Plaintiff also faults defendants for failing to file any affidavit in conjunction with their motion to dismiss as required by Northern District of New York Local Rule 7.1(a)(2). See Dkt. No. 43. Contrary to plaintiff's assertion, the lack of an affidavit provides no basis for the imposition of Rule 11 sanctions in this matter. While under a literal interpretation of the court's local rules an affidavit could arguably have been required to support defendants' motion, see N.D.N.Y.L.R. 7.1(a)(2), the motion is in the nature of a dismissal motion; such motions are generally exempted from the affidavit requirement, see id. In any event, the court is authorized, and in this instance does, overlook this potential, technical shortcoming under the court's local rules. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir.2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

> FN8. Plaintiff further contends that defendants utilized their motion as a dilatory tactic to "stall time" for the court to rule on plaintiff's request to file an amended complaint. See Dkt. No. 43. This prong of plaintiff's cross-motion also lacks merit, particularly in light of the fact that the court issued a ruling denying plaintiff's request to amend approximately one month after defendants filed their motion. See Dkt. No. 44.

Rule 11 of the Federal Rules of Civil Procedure authorizes sanctions under various circumstances, including where 1) an attorney has certified groundless and frivolous papers; 2) a document has been presented for an improper purpose, such as to harass or cause unnecessary delay or expense; 3) the claims or defenses are not supported by law; and/or 4) the allegations and other factual contentions lack evidentiary support. Fed.R.Civ.P. 11. The imposition of sanctions is purely

discretionary, and that discretion should be exercised only when improper conduct is clear. Ehrich v. Binghamton City Sch. Dist., 210 F.R.D. 17, 26 (N.D.N.Y.2002) (Sharpe, M.J.). A test of objective unreasonableness is employed to assess whether conduct is sanctionable; that is, the conduct must be "totally without merit or utterly lacking in support." Id. The alleged improper conduct should be assessed based on the following factors: 1) whether the conduct was willful or negligent; 2) whether the conduct reflected a pattern of behavior or an isolated event; 3) whether the conduct infected the entire proceeding; 4) whether the individual engaged in similar conduct in the past; and 5) the effect on the litigation in time or expense. See id.

*8 As evidenced by the sound basis on which defendants have grounded their motion, plaintiff is wholly unable to demonstrate that defendants engaged in any improper conduct under Rule 11. In light of my determination that defendants' motion to dismiss indeed has merit and should be granted, I recommend that plaintiff's motion for Rule 11 sanctions be denied as academic.

### IV. SUMMARY AND RECOMMENDATION

The record now before the court firmly establishes that at least three prior civil rights actions-and by all accounts a substantially greater number-brought by the plaintiff while a prison inmate have been dismissed on their merits for failure to state claims upon which relief may be granted. The record also fails to reveal any basis to conclude that the plaintiff is in imminent danger of serious physical injury, and thus entitled to exemption from the three strikes provision of 28 U.S.C. § 1915(g). Given the meritorious nature of defendants' motion, plaintiff is not entitled to any of the sanctions available under Rule 11. Accordingly, particularly in light of the fact that the net result of these findings is not denial altogether of plaintiff's access to the courts, but instead only the requirement that he conclude that pursuit of his civil rights claims in this action justifies expenditure of the full applicable filing fee, it is hereby

RECOMMENDED that:

1) The order granting the plaintiff IFP status (Dkt.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)

(Cite as: 2008 WL 238553 (N.D.N.Y.))

No. 6) be VACATED;

2) Defendants' motion seeking dismissal of plaintiff's complaint (Dkt. No. 41) be GRANTED as to all defendants and all claims unless Welch pays the full required filing fee of $350.00 within thirty days after the entry of a final order by the district judge addressing this recommendation;

3) Plaintiff's cross-motion seeking the imposition of sanctions against defendants pursuant to Rule 11 of the Federal Rules of Civil Procedure (Dkt. No. 46) be DENIED; and it is further

ORDERED that pending final determination with respect to this report and recommendation and, if approved, the payment by plaintiff of the required filing fee, all discovery in this action be and is hereby STAYED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2008.

Welch v. Selsky
Not Reported in F.Supp.2d, 2008 WL 238553 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.